## Patricia Anne IVERSON, n/k/a Patricia Anne Byzewski, Plaintiff, Appellant and Cross–Appellee

v.

## John Wayne IVERSON, Defendant, Appellee and Cross–Appellant.

Civ. No. 950030.

Supreme Court of North Dakota.

July 27, 1995.

---

R. Lee Hamilton, of Hamilton, Juntunen & Cilz, Grand Forks, for plaintiff, appellant and cross-appellee. Submitted on briefs.

John Wayne Iverson, Crookston, MN, pro se. Submitted on briefs.

SANDSTROM, Justice.

Patricia Iverson appealed from an order of the district court continuing indefinitely an interim order modifying visitations between her son, Jacob Iverson, and his father, John Iverson, and requiring Patricia Iverson to pay guardian ad litem fees of $250.00. Patricia Iverson also appealed from an amended judgment modifying John Iverson's child support obligation for Jacob. John Iverson filed a cross appeal from the trial court's order and amended judgment. We conclude the disputed findings by the trial court regarding visitation, child support, and payment of guardian ad litem fees are not clearly erroneous, and we affirm.

I

After her divorce from John Iverson, Patricia Iverson resumed use of her maiden name, Byzewski. We refer to Patricia Iverson as Byzewski and to John Iverson as Iverson.

Iverson and Byzewski were married in 1989 and Jacob was born later that year. Byzewski was granted a default divorce from Iverson in August 1991. Byzewski was given primary custody of Jacob in the original divorce decree. Iverson was given "the right of reasonable supervised visitation," to be supervised by Byzewski's sister, Carol Jagow, or another third party specified by Byzewski. The supervision was apparently ordered based on Byzewski's testimony that Iverson, on multiple occasions, had left the infant child unattended, had transported the

child in a car driven by an intoxicated person, and had threatened to take the child and not return. The decree also required Iverson to pay child support of $50.00 per month for Jacob. Iverson has three other children, each with a different mother, and his contact and visitation with Jacob since the divorce has been infrequent.

In an August 11, 1993 letter to the court, Iverson complained he had not seen Jacob for two years, explaining it was "mostly due to the awkwardness and uneasiness I would feel along with being unwelcomed" at Jagow's home. Iverson requested a change in supervisor and suggested his own parents, or his sister and her husband. On September 15, 1993, the court entered a temporary order setting specific times for Iverson's visitations with Jacob: "alternating Tuesday and Thursdays, commencing on the 16th day of September, 1993, from 4:00 p.m. to 8:00 p.m." The temporary order specifically retained Jagow as the supervisor for the visitations, and the court scheduled a later hearing on Iverson's motion for change of supervisor. The court later appointed a guardian ad litem to "conduct an investigation and present a report to the Court concerning future visitation arrangements for the child."

On November 3, 1993, Byzewski filed a motion requesting the court to increase Iverson's child support obligation. After hearings on the visitation and child support issues, the court entered an order, dated December 2, 1994, dismissing Iverson's motion to modify visitation, but continuing indefinitely the September 15, 1993 order scheduling visitations for alternating Tuesdays and Thursdays and retaining Jagow as supervisor of the visitations. The court ordered Byzewski to pay $250.00 and Iverson to pay $761.22 for the guardian ad litem fees. The court also entered an amended judgment, increasing Iverson's child support obligation from $50.00 to $81.00 per month.

The trial court had jurisdiction under Art. VI, § 8, N.D. Const., and N.D.C.C. §§ 27–05–06(2) and 14–05–22. We have jurisdiction under Art. VI, § 6, N.D. Const., and N.D.C.C. § 28–27–01. The appeal and cross appeal are timely under Rule 4(a), N.D.R.App.P.

## II

■ Iverson argues the trial court erred in dismissing his motion to change the visitation supervisor. A trial court's decision on modification of visitation is a finding of fact which will not be reversed unless clearly erroneous. *Smith v. Smith*, 534 N.W.2d 6, 12 (N.D.1995). A finding is clearly erroneous only when the reviewing court, based upon the entire evidence, is left with a definite and firm conviction that a mistake has been made. *Dschaak v. Dschaak*, 479 N.W.2d 484, 486 (N.D.1992).

### A

■ The hearing on the motion to modify visitation was held on July 8, 1994. Iverson personally appeared with counsel, but shortly after the hearing began Iverson left the courtroom and did not return. Iverson's counsel informed the court Iverson was not feeling well. At the conclusion of the hearing, the court instructed Iverson's attorney to provide the court with a medical certification Iverson was unable to attend for medical reasons, otherwise the motion would be dismissed. When Iverson's attorney failed to provide an acceptable explanation for Iverson's absence from the hearing, the court dismissed the motion.

Byzewski testified supervision of visitations between Iverson and Jacob is necessary as a safeguard, because Iverson drank excessively in the past and has harshly disciplined Jacob, and she fears Iverson, who lives outside North Dakota, may "take off at anytime" with Jacob. Because he left the hearing, Iverson was not available to refute Byzewski's testimony. The trial court was not convinced Iverson had made an adequate showing to justify unsupervised visitation or a change of the supervisor. Having reviewed the record, we are not left with a definite and firm conviction the trial court made a mistake. We conclude the trial court's denial of Iverson's motion to modify visitation is not clearly erroneous.

### B

Byzewski argues the trial court has no basis to continue the interim order, which sets visitations between Iverson and Jacob for alternating Tuesdays and Thursdays between 4 p.m. and 8 p.m. The court entered its interim order at an initial hearing when Iverson complained Byzewski and Jagow were not allowing visitations to occur. Byzewski's attorney, after conferring with Byzewski, told the court "[w]e have come to agreement" that a scheduled visitation of one day per week for a four-hour period would be acceptable to Byzewski, subject to later review. Evidence introduced at the July 8, 1994 hearing on this issue did not convince the trial court of a need to revert back to unscheduled visitations.

■ The purpose of visitation is to promote the best interests of the child. *Dschaak* at 487. Children are entitled to the love and companionship of both parents, and regularly scheduled visitation is an integral part of developing a healthy relationship between a child and the non-custodial parent. *See Gardebring v. Rizzo*, 269 N.W.2d 104, 110 (N.D.1978). Byzewski agreed to the scheduled weekly visitations. Consequently, Byzewski has no grounds to complain about the court continuing those scheduled visitations, absent a showing it is in the best interests of Jacob to revert back to unscheduled visitations.

## III

Under the original decree, Iverson was directed to pay child support for Jacob of $50.00 per month, based upon Iverson's $500.00 monthly income and his support obligations at that time for two other children. In its amended judgment, the trial court increased Iverson's child support obligation for Jacob to $81.00 per month, based upon the court's finding Iverson's income had increased to $900.00 per month and the court's consideration of Iverson's support obligation for another child, resulting in total support obligations for three other children besides Jacob.

### A

Regarding child support, Byzewski and Iverson have only objected to the trial court's finding Iverson's income is $900.00 per month. Byzewski specifically states the

court's analysis in computing the support amount is not at issue, and Iverson's notice of appeal specifically limits his child support objection to the issue of his monthly income. Byzewski claims Iverson's income is $1,500.00 per month, and Iverson asserts he has income of only about $700.00 per month.

■ A trial court's findings on a motion to modify child support are subject to review under Rule 52(a), N.D.R.Civ.P., and will not be overturned on appeal unless they are clearly erroneous. *Guskjolen v. Guskjolen,* 499 N.W.2d 126, 128 (N.D.1993). A material change in circumstances will support a modification of the amount of child support owed by the non-custodial parent, and a substantial change in financial circumstances of one parent usually warrants a modification. *Hallock v. Mickels,* 507 N.W.2d 541, 544 (N.D.1993).

■ Neither party introduced much evidence on this issue, but the record evidence is adequate to support the trial court's finding Iverson's income is $900.00 per month. At the April 15, 1994 hearing, Iverson testified he was taking college courses and working two jobs, totaling 41 hours per week, at $4.25 per hour. He estimated his monthly income from all sources to be between $700.00 and $713.00. Susan Jacobson, Iverson's girlfriend, testified Iverson had quit a summer construction job at which he was working about 68 hours per week and earning $5.50 per hour. Jacobson testified Iverson quit the construction job because of the long work hours and because the commute between Grand Forks and Crookston, Minnesota, where Iverson and Jacobson reside together, was too difficult to maintain. Jacobson's testimony reveals Iverson has the ability and opportunity to earn, at least on a seasonal basis, considerably more than $700.00 per month.

Although lacking in specifics, we conclude this record evidence is adequate to support the trial court's finding Iverson's monthly income, for purposes of determining his child support obligation, is $900.00 per month. We are not left with a definite and firm conviction the trial court made a mistake, and, therefore, we conclude the court's finding is not clearly erroneous.

B

■ Byzewski also complains the trial court improperly relied upon a post-hearing letter from Iverson to determine Iverson's income. In a letter to Byzewski's counsel, the court specifically explained it would not rely on letters or documents not introduced into evidence. Because there is adequate record evidence to support the court's finding on this issue, we conclude Byzewski was not prejudiced by the post-hearing letter submitted to the court by Iverson.

IV

The trial court appointed a guardian ad litem to investigate the factual circumstances underlying the visitation issue. In its final order the court directed Byzewski to pay $250.00 and Iverson to pay $761.22 for the guardian ad litem fees. Byzewski and Iverson objected to the court's assessment of the guardian ad litem fees, each asserting inability to pay those fees.

■ The taxing of costs, including the assessment of fees to pay a guardian ad litem, are within the trial court's discretion and will not be disturbed on appeal unless it is affirmatively established the trial court abused its discretion. *Simons v. Gisvold,* 519 N.W.2d 585, 588 (N.D.1994). The record shows Byzewski and Iverson have some earned income but both are struggling financially. We conclude the trial court did not abuse its discretion in assessing the guardian ad litem fees between the parties.

V

The order and amended judgment are affirmed.

VANDE WALLE, C.J., and NEUMANN, LEVINE and MESCHKE, JJ., concur.