Kendal J. EKLUND, Plaintiff
and Appellant,

v.

Linda L. EKLUND, Defendant
and Appellee.

Civ. No. 950041.

Supreme Court of North Dakota.

Sept. 22, 1995.

Chapman and Chapman, Bismarck, for plaintiff and appellant; argued by Daniel J. Chapman.

Steven J. Simonson (argued), Assistant State's Attorney, Minot, for defendant and appellee. Appearance by Tina M. Heinrich, Minot.

Jean R. Mullen, Assistant Attorney General, Bismarck, for amicus curiae State of North Dakota. Submitted on brief.

MESCHKE, Justice.

Kendal J. Eklund appealed from an order increasing his monthly child support payments. We reject an array of legal arguments about the authority of the Department of Human Services to adopt the child support guidelines, and the standing of a child support enforcement agency to seek modification for a custodial parent. We affirm.

Kendal J. Eklund and Linda L. Eklund were married in 1976, and divorced in 1988. Kendal had adopted Larry, born July 30, 1972, Linda's child from a prior marriage. Kendal and Linda had another child, Jeremy, born May 24, 1978. The divorce decree ordered Kendal to pay Linda $300 monthly support for each child, totaling $600.

When Larry turned eighteen in 1990, Kendal stopped support for him, but continued paying $300 monthly for Jeremy. Linda promptly moved to increase the support for Jeremy. The trial court denied the motion because Linda "failed to show a significant change of circumstances."

In July 1992, the Minot Regional Child Support Enforcement Unit (Unit) moved on Linda's behalf to increase Kendal's support for Jeremy to $540 monthly under the child support guidelines. The trial court again concluded that "no change of circumstances was shown or that an attempt was even made to show a change of circumstances in view of the position of the . . . Unit that no showing was necessary." The court reasoned that under "temporary section 14–09–08.4, N.D.C.C., . . . the review process is limited to child support orders which are being enforced by the child support agency," concluded "this child support order is not being enforced by the . . . Unit as provided by the statute," and denied the motion.

In March 1994, the Unit moved again on Linda's behalf to increase Kendal's payments to $572 monthly to meet the child support guidelines. This time, the trial court decided that "the statute upon which the Court based its most recent ruling has been materially modified" to allow increase of support without a showing of changed circumstances. The court concluded that Kendal's procedural and constitutional objections were without merit and granted the increase. Kendal appeals.

Kendal asserts there is "virtually no issue of fact in this case," only questions of law. Kendal presents an array of legal arguments: (1) the Unit was not legally entitled to seek change of a "private" child support order; (2) res judicata prevented the Unit from renewing the motion to increase child support; (3) the Unit did not properly notify him before its "review" and "enforcement" of this order; (4) the Unit failed to establish the child support guidelines were properly adopted; and (5) the guidelines and statutes on changing child support are unconstitutional. We reject Kendal's contentions.

## 1. *Child Support Enforcement*

Kendal argues, in effect, that a child support agency has no standing to seek modification of a support order between parents unless public funds are affected. He claims NDCC 14–09–08.5 "states unequivocally that the child support agency shall give notice thereunder that a child support order 'being enforced by the child support agency' may be subject to review," and "[i]f, then, the order is not being enforced, the child support agency has no business getting involved." Arguing the Unit had no power to enforce his obligation when he "was up-to-date in all of his child support payments and always has been," Kendal insists his support payments should not be subject to judicial change on the Unit's motion. Kendal claims: "While, then, Section 14–09–08.4, N.D.C.C., provides that each order must be reviewed every 36 months, it is Section 14–09–08.5, N.D.C.C., which states how that must be done and in order to trigger the discovery procedures in Section 14–09–08.6, N.D.C.C., the procedures in Section 14–09–08.5 must be followed."[1]

Although these bureaucratic statutes are clumsily phrased, we have interpreted their effect and intent before. In *State ex rel. Younger v. Bryant*, 465 N.W.2d 155, 157 (N.D.1991), we held "[t]he language of the temporary section clearly provides that the review process is limited to child support orders which are being enforced by the child support agency." Anticipating expiration of the temporary sections, we explained, "By October 1, 1993, *all cases* will be subject to the periodic review [by the agency]." *Id.* (emphasis added). The Unit's motion here was made after October 1, 1993.

In 1992, the trial court correctly denied the Unit's motion on Linda's behalf to increase Kendal's child support because that order did not affect public funds and was not yet subject to periodic review and enforcement by the child support agency upon request of an obligor or obligee. After October 1, 1993, Linda's request for the Unit's assistance was clearly valid. *See* NDCC 14–09–08.9 ("An obligor or an obligee may request review . . ."). In 1994, the court correctly granted the Unit's motion to increase Kendal's child

---

**1.** NDCC 14–09–08.5 (part) refers to agency "review under section 16 of chapter 148 of the 1989 Session Laws or section 14–09–08.4." The cited section 16 from the 1989 Session Laws (as amended by 1991 N.D. Laws ch. 152, § 1) created a temporary statute governing periodic review of child support orders effective from July 7, 1991 to October 1, 1993:

1. The public authority shall establish standards to determine that a child support order being enforced by the child support agency should be reviewed. If required to do so in order to secure approval by federal officials charged with administration of title IV–D of the Social Security Act [Pub.L. 93–647; 88 Stat. 2351; 42 U.S.C. 651 et seq., as amended], the public authority shall make those standards a part of a plan indicating how and when child support orders are to be periodically reviewed and adjusted.

2. If the child support agency determines, at the request of the obligor or the obligee, or on its own motion, that, pursuant to the standards described in subsection 1, a child support order being enforced by the child support agency should be reviewed, the child support agency shall initiate a review of such order. The child support agency may seek an amendment of the order if the order is inconsistent with the amount that would be required by child support guidelines established under subsection 1 of section 14–09–09.7 and, if the order provides for child support payments in an amount less than eighty-five percent of the amount that

would be required by those guidelines, shall seek an amendment of the order.

With amendments, the permanent NDCC 14–09–08.4 directs:

1. Each child support order must be reviewed by the child support agency no less frequently than thirty-six months after the establishment of the order or the most recent review of the order unless:

   a. In the case of an order with respect to which there is in effect an assignment under section 50–09–06 or 50–09–06.1, subsection 2 of section 50–24.1–02, or section 50–24.1–02.1, the child support agency has determined that a review is not in the best interests of the child and neither the obligor nor the obligee has requested review; or

   b. In the case of any other order neither the obligor nor the obligee has requested review.

2. If, upon review, the child support agency determines that the order provides for child support payments in an amount that is inconsistent with the amount that would be required by the child support guidelines established under subsection 1 of section 14–09–09.7, the child support agency may seek an amendment of the order. If the order provides for child support payments in an amount less than eighty-five percent of the amount that would be required by those guidelines, the child support agency shall seek an amendment of the order.

support because NDCC 14–09–08.4 then authorized the child support agency to periodically review and seek amendment of each child support order unless "neither the obligor nor the obligee has requested review."

Kendal asks us to read in isolation the language fragment, left in NDCC 14–09–08.5, "being enforced by the child support agency," to still limit the agency's authority. That would make no sense. Section 14–09–08.5 must be read with NDCC 14–09–08.4, because we read related statutes together to harmonize them. *Ebach v. Ralston,* 469 N.W.2d 801, 803–04 (N.D.1991). The permanent section, NDCC 14–09–08.4(1), expressly broadened the scope of the orders to be reviewed and enforced by an enforcement agency, from those specifically enforced by the agency for public fund purposes, as the temporary section apparently did, to each child support order unless neither parent has requested review and assistance.

■ What is more, NDCC 14–09–08.4(3) commands a court upon motion to modify a child support order to conform the amount "to that required under the child support guidelines," and the 1993 amendments to that subsection expressly authorize judicial review of all child support orders at the initiative of the child support agency "whether or not the motion or petition for amendment arises out of a periodic review of a child support order" by the agency. 1993 N.D. Laws ch. 152, § 5. Reading NDCC 14–09–08.4 and 14–09–08.5 together, the trial court's action changing Kendal's child support obligation to conform to the guidelines, at the initiative of the Unit on Linda's behalf, was correct.

*2. Res Judicata*

■ Kendal argues res judicata prevents the Unit from renewing its motion to increase child support, though he "freely concede[s] that the doctrine of res judicata . . . does not apply to a motion with the same strictness as it does to a judgment." Kendal describes the Unit's latest motion as "merely a renewal of the same effort to convince the Court that the word 'enforced' does not mean 'enforced.'" Since the Unit did not appeal the denial of its 1992 motion, Kendal argues,

"The State should be held estopped to revive the same argument again." We disagree.

A trial court has long had continuing power to modify a child support order. *See* NDCC 14–05–22(1) ("In an action for divorce, the court, before or after judgment, may give such direction for the custody, care, and education of the children of the marriage as may seem necessary or proper, and may vacate or modify the same at any time."); *Voskuil v. Voskuil,* 256 N.W.2d 526, 529 (N.D.1977) (continuing jurisdiction). However, a material change of circumstances has been necessary to modify child support. *See Sinkler v. Sinkler,* 49 N.D. 1144, 194 N.W. 817, 820 (1923). This doctrine has given a limited finality effect to a child support order, while leaving the order "open to subsequent revision" for the best interests of the children. Restatement (Second) of Judgments § 31, Comment (d) (1982).

> [T]he characteristics or circumstances of the judgment in a status determination often invoke exceptions to the rule of claim preclusion. The portion of the judgment dealing with support, for example, may not purport to be final or may as a matter of law be open to subsequent revision. The concept of changed circumstances, § 24, Comment *f,* often has application.

*Id.* Recent legislation has not replaced this concept, but rather it has changed the parameters and procedures for modifying child support.

The finality feature in the current law restrains the frequency of changing a child support order to not more than once a year unless a material change of circumstances is shown.

> If a child support order sought to be amended was entered at least one year before the filing of a motion or petition for amendment, the court shall order the amendment of the child support order to conform the amount of child support payment to that required under the child support guidelines, whether or not the motion or petition for amendment arises out of a periodic review of a child support order, and whether or not a material change of circumstances has taken place, unless the

presumption that the correct amount of child support would result from the application of the child support guidelines is rebutted. If a motion or petition for amendment is filed within one year of the entry of the order sought to be amended, the party seeking amendment must also show a material change of circumstances. NDCC 14–09–08.4(3). This subsection is much like it was at the time of the Unit's 1992 motion, but a new clause, "whether or not the motion or petition for amendment arises out of a periodic review of a child support order," has been inserted. 1993 N.D. Laws ch. 152, § 5. Now, there is no precondition of "qualifying for periodic review" or "enforcement" by the Unit, except a request by an obligor or obligee. Then, the only further limitation is, when the motion to modify is made within a year of a prior order, a material change of circumstances is still needed. *Schmidt v. Reamann*, 523 N.W.2d 70, 72 (N.D.1994). If the motion to increase support comes more than a year after an earlier order, NDCC 14–09–08.4(3) directs the court to modify it to meet the guidelines.

The Unit first moved on Linda's behalf to increase Kendal's support payments on July 28, 1992, and again moved over a year later on March 3, 1994. The latter motion came after statutory amendments changed a child support agency's power to enforce orders other than those affecting public funds. The trial court ruled: "Because the statute upon which the Court based its most recent ruling has been materially modified, neither res judicata nor estoppel applies." We agree.

### 3. *Adequate Notice*

■ Kendal argues the Unit failed to properly give him the statutory notice to be given to an obligor 35 days before enforcement review by a child support agency. NDCC 14–09–08.5(1).[2] Kendal claims that the Unit's notice letter to him on October 13, 1993, "says that the review will be started in 30 days, not 35 as set forth in the statute." The Unit did not complete its review until four months after the notice. Kendal does not claim he was prejudiced by the faulty notice, but he insists he was "not given the notice required by the statute and that is enough." We disagree.

We have difficulty understanding why the Unit did not follow the explicit directions of NDCC 14–09–08.5 in giving Kendal notice before its review. Still, Kendal has not shown how he was prejudiced, had more than 35 days notice, and was afforded the usual procedures of motion, notice of motion, and hearing. NDRCivP 61 directs: "The court at every stage of the proceeding must disregard any error or defect in the proceeding which does not affect the substantial rights of the parties." We conclude any deviation in the beginning notice was harmless.

### 4. *Guidelines Authorized*

■ Kendal argues the Unit failed to meet its burden of persuasion after the interim Legislative Committee on Administrative Rules (Committee) had objected to the child support guidelines because the issuing agency, the Department of Human Services (Department), had not demonstrated the guidelines were within its delegated authority. We disagree.

The Administrative Agencies Practice Act directs that, after the Committee objects to a new rule, "the burden of persuasion is upon the agency in any action for judicial review or for enforcement of the rule to establish

---

**2.** In its entirety, NDCC 14–09–08.5 says:

*Notice of periodic review of child support orders.* 1. The child support agency shall provide written notice that a child support order being enforced by the child support agency may be subject to review under section 16 of chapter 148 of the 1989 Session Laws or section 14–09–08.4. The notice may be sent by first-class mail to the obligor and the obligee, at the addresses they have most recently provided to the child support agency, at least thirty-five days before the commencement of the review.

2. The notice to the obligor must inform the obligor of the duty to furnish the information required by section 14–09–08.6 and that a failure to furnish the required information may result in the entry of an order compelling the furnishing of the information. The notice must also inform the obligor that the review determination will be mailed to the obligor following the review. The notice must be accompanied by an income report form, together with instructions for the accurate completion of the income report form.

that the whole or portion thereof objected to is within the procedural and substantive authority delegated to the agency." NDCC 28–32–03.3(5).[3] In 1991, as directed by NDCC 14–09–09.7, and after public hearings, the Department established child support guidelines. The new guidelines adopted an "obligor model" for setting the amount of child support, not an alternate "income shares" model. The Department explained why it adopted the "obligor model": "[B]ecause the income shares model was more complex it would increase litigation costs, lead to more requests for review, and be more difficult to use in emergency cases[,] and . . . the income shares model appeared more fair but in most cases made little or no difference in award amounts." Report of the North Dakota Legislative Council, Fifty–Third Legislative Assembly 12 (1993) (1993 LC Report). The interim Committee objected to the use of the "obligor model," instead of the "income shares" model.[4] Id. at 13. The Department "informed the committee by letter that it did not intend to make any changes to the rule it had adopted."[5] Id. The Department's response reasonably explained why it was authorized to use the "obligor model" in the guidelines.

Therefore, we agree with the trial court that "NDCC 14–09–09.7 provides clear statutory authority authorizing Human Services to establish child support guidelines,"[6] and that

---

3. Effective August 1, 1995, this language has been moved to NDCC 28–32–03.3(3)(d).

4. The interim Committee gave these reasons:
    1. Both parents have a legal duty to support their children.
    2. Any guidelines adopted to ensure proper child support amounts are paid upon divorce must be based on the best interests of the child.
    3. The obligor model adopted by the Department of Human Services establishes child support amounts by using a percentage of the obligor's income and does not take into consideration the income of the custodial parent.
    4. The income shares model considered, but not adopted, by the department combines the income of both parents and requires the parties to contribute child support in proportion to the income each receives.
    5. Public opinion expressed by the parties directly affected (the parents) strongly supports the income shares model over the obligor model because of the inherent fairness of that proposal. The best interests of the child should be better served by adoption of the income shares model as it would provide not only sufficient financial resources for the child but should provide for more harmonious relationships due to the fairness of the income shares model.
    1993 LC Report at 13. See also id. at 18–21 (Committee's child support study).

5. The Department gave these reasons:
    1. The department has full legal authority to establish child support guidelines, and is required by statute to do so.
    2. The rules objected to were adopted pursuant to law, i.e. the department complied with all procedural requirements.
    3. The rules objected to represent a fully considered choice after hearing and reflecting on comments on those rules, both pro and con.
    4. The rules objected to took effect in February 1991. The then-sitting Fifty-second Legislative Assembly thereafter failed to pass House Bill No. 1428, which would have required the department to adopt rules encompassing the "income shares" model for child support guidelines.
    5. Had the department taken action after the legislative session to changes its rules to reflect the "income shares" model it would have been contrary to the legislative action on House Bill No. 1428.
    6. The department cannot now implement child support guidelines that require consideration of the oblig[ee]'s income because current law makes provision for securing information concerning the income of the obligor, but not for securing information concerning the income of the obligee.
    7. The first four items set out in the committee's objection are true, but not determinative in any sense as to the propriety of the department's action in adopting the rules.
    8. The department would debate the committee's rationale in item 5 regarding public opinion because the rulemaking record reflects an expression of support for the adopted rules which is virtually even with that for the income shares model.
    9. The child support guidelines are a part of an overall system of child support collection which is intended to ensure that children's needs are met, and that the state's fiscal outlays for aid to families with dependent children are minimized.
    1993 LC Report at 13.

6. NDCC 14–09–09.7(1), (2), and (4) direct:
    1. The department of human services shall establish child support guidelines to assist courts in determining the amount that a parent should be expected to contribute toward the support of the child under this section. The guidelines must:
    a. Include consideration of gross income.
    b. Authorize an expense deduction for determining net income.

"[t]he statute does not preclude child support guidelines based upon the obligor model." We believe the trial court also explained why there can be no doubt about this conclusion: "In fact, H.B. 1021 which would have provided for an income shares model was defeated in a legislative session held [in 1993] after the filing of objections by the Legislative Council." *See Effertz v. North Dakota Workers Compensation Bureau,* 525 N.W.2d 691, 693 (N.D.1994) ("The legislature is presumed to know the construction of its statutes by the executive departments of the State and the failure to amend the statute indicates legislative acquiescence in that construction.").

### 5. *Constitutionality*

■ Kendal argues that the guidelines and statutes on child support are unconstitutional because they deny equal protection and due process under the law, and that these statutes amount to an impermissible Bill of Attainder. He claims "where the full impact of the forces of the State are marshalled in favor of one of its citizens as against another, th[e] mandate of equality is violated," "it is a denial of due process of law for the legislature to give to a child support enforcement agency unbridled authority to intrude into the privacy of persons such as Kendal," and "[f]ailure to support a child is a Felony. In lieu of the criminal charge, the non-custodial parent is punished by direct and indirect legislative acts."

We have often outlined the proper analysis for a constitutional attack on a statute on equal protection grounds. *See, e.g., Gange v. Clerk of Burleigh County Dist. Court,* 429 N.W.2d 429 (N.D.1988). The appropriate standard of review must be determined, and the statute analyzed on that basis. *Id.* However, in his appellant's brief challenging the constitutionality of this child support system, Kendal did not cite a single precedent for his arguments, did not pose any standard for this constitutional review, and did not undertake the proper analyses. Kendal merely contends there is "unequal treatment" between custodial and non-custodial parents, there are "no restrictions upon the agency's implementation of procedures," and "[t]he effect of the Legislative action is to directly punish the obligors of child support, noncustodial parents, without the benefit of due process of law." These contentions lack any merit.

■ A party making a constitutional challenge "must do much more than acknowledge, in passing, the constitutional difficulties of a statute," and we adhere to "the rule that parties must bring up the 'heavy artillery' when asserting constitutional claims." *Swenson v. Northern Crop Ins., Inc.,* 498 N.W.2d 174, 178 (N.D.1993). Kendal has not sufficiently raised these constitutional claims. We agree with the trial court that, for his equal protection argument, "[i]t is unclear which standard [Kendal] is asking the Court to adopt," that his "due process argument was raised without substantive support," and that his Bill of Attainder argument "does not rise to the level of constitutional proportion."

We conclude that the trial court correctly increased Kendal's monthly child support to meet guidelines validly adopted under applicable statutes and by appropriate motion of a child support enforcement agency, and that Kendal has not adequately challenged the constitutionality of the guidelines and statutes on child support.

We affirm.

VANDE WALLE, C.J., and LEVINE, NEUMANN and SANDSTROM, JJ., concur.

---

c. Designate other available resources to be considered.

d. Specify the circumstances which should be considered in reducing support contributions on the basis of hardship.

2. The department shall accept and compile pertinent and reliable information from any available source in order to establish the child support guidelines. Copies of the guidelines must be made available to courts, state's attorneys, and upon request, to any other state or county officer or agency engaged in the administration or enforcement of this chapter.

\*  \*  \*  \*  \*  \*

4. The department shall review the child support guidelines periodically, as the department determines necessary, but at least once every four years, to ensure that the application of the guidelines results in the determination of appropriate child support award amounts.

The guidelines have been amended, effective January 1, 1995. *See* NDAC 75–02–04.1.

SANDSTROM, Justice, concurring.

I agree with the opinion of the Court. I write separately to note the constitutional infirmity of N.D.C.C. § 28–32–03.3 as effective at the time of the district court action, and as amended by the 1995 legislature. As discussed in part 4 of the opinion of the Court, the legislature has attempted to delegate to the legislative council's committee on administrative rules the authority, by objecting, to shift the burden of persuasion in court cases involving administrative rules. The 1995 legislative assembly attempted to give the legislative council's committee on administrative rules the authority to veto rules adopted by administrative agencies. 1995 N.D. Sess. Laws, ch. 310.

Ours is not a parliamentary system. Under our constitutional system, the legislature may not delegate to itself, or to a subset of its members, executive or judicial functions; neither may the legislature delegate legislative power to a subset of its members. *See* N.D. Const. Art. IV, §§ 1, 13, 32, 40; Art. V, §§ 1, 9, 10; Art. VI, § 1; Art. XI, § 26; *INS v. Chadha*, 462 U.S. 919, 103 S.Ct. 2764, 77 L.Ed.2d 317 (1983); *State ex rel. Spaeth v. Meiers*, 403 N.W.2d 392 (N.D.1987); *State ex rel. Barker v. Manchin*, 167 W.Va. 155, 279 S.E.2d 622 (1981); *State ex rel. Stephan v. Kansas House of Rep.*, 236 Kan. 45, 687 P.2d 622 (1984); *Iowa Fed. of Labor v. Dept. of Job Serv.*, 427 N.W.2d 443 (Iowa 1988).

The legislature was apparently well aware of the questionable constitutionality of its action. The legislative veto bill provides:

"Section 4 [relating to shifting the burden of persuasion] of this Act is suspended from operation and becomes effective retroactive to August 1, 1995, upon a ruling by the North Dakota supreme court that any portion of subsection 1 [relating to the administrative rules committee declaring a rule void] of section 28–32–03.3 as created by section 3 of this Act is unconstitutional."

1995 N.D. Sess. Laws, ch. 310, § 5.