**Teri E. SHAVER, f/k/a Teri E. Kopp, Plaintiff, Appellant and Cross–Appellee,**

v.

**James A. KOPP, Defendant, Appellee and Cross–Appellant.**

**Civil No. 950173.**

Supreme Court of North Dakota.

March 19, 1996.

Thomas M. Tuntland (argued), Mandan, for plaintiff, appellant and cross-appellee.

Daniel J. Chapman (argued), of Chapman & Chapman, Bismarck, for defendant, appellee and cross-appellant.

MESCHKE, Justice.

Teri E. Shaver appealed from an amended decree modifying child support for children in her custody. James A. Kopp, the obligor, cross-appealed. We reverse and remand for further proceedings.

Shaver and Kopp were married and had two sons, Jeremy James, born December 29, 1975, and Travis Michael, born July 27, 1977. When the couple divorced in 1983, the trial court placed custody of the two children with Shaver, and ordered Kopp to pay $300 monthly for child support. Kopp later remarried, divorced, and is obligated to pay $582 monthly to support children of that second marriage.

In early 1994, Shaver moved for "periodic review of child support" and also asked the trial court to extend support for Jeremy past his eighteenth birthday while he continued to attend high school. Kopp opposed the motions and did not respond to requests for admissions or answer interrogatories. After Shaver moved to compel, Kopp asserted she had no right under NDCC 14-09-08.4 to seek an increase in child support.

Before a June 1994 hearing, Shaver served Kopp with a subpoena duces tecum to produce his pay records. Kopp moved for a protective order, alleging Shaver had no right to inspect Kopp's records. After the June hearing, the trial court found that Jeremy was 18 years old, had attended high school, and had graduated on June 5, 1994. The court ruled that Kopp owed Jeremy a duty of support for the months of January through June 1994. The court denied Kopp's motion for a protective order, granted Shaver's motion to compel, denied Shaver's request for attorney fees, and ordered extension of Kopp's obligation to support Jeremy.

In August 1994, Shaver amended her motion for increased child support and a hearing was held in December 1994. In February 1995, the trial court issued an opinion that excluded Kopp's overtime and tax-deferred savings from his income for computing child support. An amended decree was entered in April 1995 ordering Kopp to pay "$469.00 per month for two children and $346.00 per month for one child as of the 1st day of February, 1994." Shaver moved to amend the decree under NDRCivP 60 because it did not include the continuation of support for Jeremy from January through June 1994. The trial court granted the motion and a corrected decree was entered in May 1995. Shaver appealed and Kopp cross-appealed.

## I. PRIVATE ENFORCEMENT

█ Kopp asserts the trial court should have dismissed Shaver's motion to review child support under NDCC 14–09–08.4 because Shaver, as a private individual and not a child support agency, was not entitled to use that procedure. NDCC 14–09–08.4(3) directs:

> If a child support order sought to be amended was entered at least one year before the filing of a motion or petition for amendment, the court shall order the amendment of the child support order to conform the amount of child support payment to that required under the child support guidelines, *whether or not the motion or petition for amendment arises out of a periodic review of a child support order,* and whether or not a material change of circumstances has taken place, unless the presumption that the correct amount of child support would result from the application of the child support guidelines is rebutted. If a motion or petition for amendment is filed within one year of the entry of the order sought to be amended, the party seeking amendment must also show a material change of circumstances.

(Emphasis added). Even though this subdivision thus does not confine its application to a motion by a child support agency, Kopp contends that the numerous references to "child support agency" in other subdivisions

of the statute convey an intent that a motion under subdivision 3 can be made only by a child support agency. We reject this argument.

The "plain language" of NDCC 14–09–08.4(3) entitled a child support obligor to a review of his child support obligation without showing a material change of circumstances, the court of appeals held in *O'Callaghan v. O'Callaghan,* 515 N.W.2d 821, 823 (N.D.Ct. App.1994). So too, in *Eklund v. Eklund,* 538 N.W.2d 182, 186 (N.D.1995), we held that the legislature's 1993 inclusion of the phrase, "whether or not the motion or petition for amendment arises out of a periodic review of a child support order," removed all preconditions for bringing a motion more than a year after an earlier order, "except a request by an obligor or obligee." Although neither decision addressed the specific contention made by Kopp, those decisions clearly presage our conclusion today.

█ Even if we were to agree with Kopp that NDCC 14–09–08.4(3) is ambiguous because of its placement among other subdivisions referring to a child support agency, we would decline to give it the meaning proposed by Kopp. When we construe an ambiguous statute to ascertain the legislature's intent, we may consider the legislative history of the statute. *City of Fargo v. Ness,* 529 N.W.2d 572, 575 (N.D.1995). The 1993 amendment to subsection 3 was intended "to assure that the same process is available to all parties" "without regard to the involvement of child support officials." 1993 N.D. Sess. Laws Ch. 152, § 6; Hearing on House Bill 1181 before the House Human Services Committee, January 18, 1993, Written Testimony of Blaine Nordwall, at pp. 5–6. Furthermore, since Kopp's proposed construction might create constitutional questions of equal protection, *see Rueckert v. Rueckert,* 499 N.W.2d 863, 871 n. 5 (N.D.1993), we will construe the statute to avoid any constitutional conflict. *Basin Elec. Power v. N.D. Workers Comp.,* 541 N.W.2d 685, 689 (N.D. 1996). We conclude that Shaver's motion to modify child support was statutorily authorized.

To invoke this statutory provision, a movant must show only "that the 'child support

order sought to be amended' was entered more than a year before the motion to amend was brought." *Helbling v. Helbling*, 541 N.W.2d 443, 445 (N.D.1995). Shaver did that here. The trial court correctly refused to dismiss Shaver's motion on this basis.

## II. SERVICE

■ Kopp asserts that the part of the amended decree continuing support for Jeremy until completion of high school should be reversed because Shaver failed to comply with NDCC 14–09–08.2(2) that requires the clerk of court to serve the affidavit of a person seeking support for children after majority "by first-class mail upon the person owing the duty of support." Kopp acknowledges that the affidavit was served, but by someone other than the clerk of court.

■ Although Shaver's failure to comply with the statutory requirement is puzzling, Kopp has not shown how he was prejudiced by having the affidavit served by someone other than the clerk of court. Under NDRCivP 61, a court must disregard any error or defect which does not affect the substantial rights of the parties. As in *Eklund*, 538 N.W.2d at 186, we conclude that this deviation from the service requirement was harmless error.

## III. CHILD SUPPORT

■ Both parties assert that the trial court committed error in determining Kopp's child support obligation. A trial court's findings on a motion to modify child support will not be rejected on appeal unless they are clearly erroneous. NDRCivP 52(a); *Iverson v. Iverson*, 535 N.W.2d 739, 743 (N.D.1995). As we explained in *Mahoney v. Mahoney*, 538 N.W.2d 189, 192 (N.D.1995), a finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence supports it or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made.

### A.

■ Shaver asserts that the trial court erred in computing Kopp's child support obligation because it did not include his overtime wages and his employer's contributions to a tax deferred savings plan in Kopp's gross income, and because it used the wrong measure for calculating Kopp's federal income tax obligation. We agree.

At the December 1994 hearing, Shaver called the accounting manager for Kopp's employer, Amoco Oil Refinery (Amoco), who had access to Kopp's pay records. Amoco's manager testified Kopp was paid biweekly, and produced records of 25 of Kopp's 26 pay periods for 1994. Those records showed, as of the 25th pay period, Kopp had taxable earnings of $38,673.51. In addition, Kopp had contributed $4,408.37 to his voluntary tax-deferred savings plan. Amoco matched Kopp's tax-deferred contribution on a dollar-for-dollar basis up to six percent of his income. Amoco thus contributed an additional $2,648.82 for Kopp through his 25th pay period. Amoco's manager indicated Kopp had access to both his and Amoco's contributions, acknowledging that if Kopp withdrew those funds, all taxes would be due, in addition to a 10 percent penalty.

Kopp had tax deductible medical premiums of $812.86 and dental premiums of $252.75. Kopp also received compensation from a labor union for his services as recording secretary. Through December 19, 1994, Kopp had received $2,798.76 in gross wages from the union. Wage and tax statements from tax years 1992 and 1993 showed combined wages from Amoco and the union totaling $44,181.18 and $46,134.16, respectively.

The trial court found Kopp had a 1994 total gross income of $43,439.11. The court excluded Kopp's overtime wages and Amoco's match to his tax-deferred savings in its calculations, reasoning overtime "is an unknown variable for any future payments," and Kopp's tax-deferred savings are "not income" until "drawn upon." The court also applied 28 percent as a "rule of thumb" for calculating Kopp's federal income tax liability.

■ A finding of net income is essential to a proper determination of the correct amount of child support. *Foreng v. Foreng*, 509 N.W.2d 38, 40 (N.D.1993). NDAC 75–

02–04.1–02(6) [same][1] dictates that the annual total of all income must be determined and then divided by twelve to determine the obligor's monthly net income. Income "must be documented through the use of tax returns, current wage statements, and other information sufficiently to fully apprise the court of all gross income." NDAC 75–02–04.1–02(7) [same]. Gross income is broadly defined as "income from any source, including salaries, wages, overtime wages, commissions, bonuses, deferred income, dividends, severance pay, pensions, interest, . . . [and] retirement benefits. . . ." NDAC 75–02–04.1–01(2) [75–02–04.1–01(5) ]. Applicable deductions found in NDAC 75–02–04.1–01(4) [75–02–04.1–01(7) ] must then be used to calculate net income.

▆▆▆▆ The amount an employer contributed to an obligor's pension plan, plus family health insurance premiums provided by the employer, constituted "income from any source" under the broad definition of gross income in the guidelines, we clarified in *Shipley v. Shipley*, 509 N.W.2d 49, 53 (N.D. 1993). We believe an employer's contribution to a tax-deferred savings plan likewise qualifies as gross income under the guidelines. The trial court's reason for excluding those savings, that they are not income for tax purposes until withdrawn, is true for most pension plans, but is irrelevant and not controlling. Moreover, this reasoning conflicts with the purposes for treating deferred income differently than does the Internal Revenue Service and for including it in the definition of gross income for computing child support. The drafters explained why in Summary of Comments Received in Regard to Proposed New N.D. Admin. Code Ch. 75–02–04.1, Child Support Guidelines, December 14, 1990, Prepared by Blaine Nordwall, at p. 4: Because "[c]hildren cannot wait for support, . . . obligors should not be allowed the option of deferring income until the child reaches adulthood and no support obligation remains."

This record shows Kopp is allowed to withdraw his employer's contributions, as well as his own, at any time, subject to taxes and penalties. If, as we held in *Shipley*, an employer's contribution to a pension plan is treated as gross income, there is no principled reason to treat the employer's contribution to Kopp's tax deferred savings plan any differently.

Although the guidelines permit some employee retirement contributions, those "required as a condition of employment," to be deducted from gross monthly income to compute net income, a deduction for an employer's contribution is not designated. NDAC 75–02–04.1–01(4)(g) [75–02–04.1–01(7)(g) ]. Kopp's individual contribution to his tax-deferred savings was not required as a condition of his employment. We conclude that the trial court erred in excluding the employer's contribution to Kopp's tax-deferred savings as gross income under the guidelines.

Likewise, the trial court erred in refusing to include Kopp's overtime wages in computing his gross income. Overtime wages are specifically listed as includable as gross income under NDAC 75–02–04.1–01(2) [75–02–04.1–01(5) ]. Although the trial court reasoned overtime "is an unknown variable for any future payments," courts, by necessity, must rely on past income information when calculating child support amounts because past income is generally the best predictor of future income. *See Helbling*, 541 N.W.2d at 447. The current child support guidelines clearly express this principle:

> Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income. If circumstances that materially affect the child support obligation are very likely to change in the near future, consideration may be given to the likely future circumstances.

NDAC 75–02–04.1–02(8). Thus, under the guidelines, whether a payment is recurrent is

---

1. The December 1994 hearing on the motion occurred shortly before the new child support guidelines became effective January 1, 1995. The trial court's decision was rendered after the effective date of the new guidelines. We refer first to the pre–1995 guidelines relied on by the parties and the trial court, with bracketed references to the current citations to the guidelines.

not the determinative inquiry; even nonrecurrent payments must be considered in computing a parent's future child support obligation. *See Helbling*, 541 N.W.2d at 447. Furthermore, there was no evidence that Kopp's overtime wages were unlikely to recur. Amoco's accounting manager merely agreed with Kopp's counsel that there was no "guarantee" Kopp would receive any overtime wages during 1995. The trial court erred in excluding overtime wages in computing Kopp's gross income.

The trial court also calculated Kopp's federal income tax liability as 28 percent of his gross income. But NDAC 75–02–04.1–01(4)(a) and (b) [75–02–04.1–01(7)(a) and (b)] require application of "standard deductions and tax tables" for determining "net income" under the child support guidelines. *See Smith v. Smith*, 538 N.W.2d 222, 230 (N.D. 1995); *Shipley*, 509 N.W.2d at 53. Although Kopp asserts Shaver presented no evidence of the applicable tax tables, the trial court should take judicial notice of the tax tables whether or not the parties have brought them to the court's attention. *See, e.g.*, NDREv 201; *Bisone v. Bisone*, 165 Wis.2d 114, 477 N.W.2d 59, 62 (1991). Under some circumstances, the use of the 28 percent approximation, rather than the tax tables, may be harmless error. But here, because we remand for a new hearing to calculate Kopp's child support obligation, we further instruct the parties to submit, and the trial court to apply, the standard tax tables as directed by the guidelines.

### B.

■ Kopp asserts that the trial court should have based its child support determination solely on evidence of his earnings during the twelve month period preceding the January 1994 filing of the motion for increased support. Kopp contends the trial court erred by relying, instead, on evidence of Kopp's earnings from 25 of 26 pay periods for 1994 up to the date of the December hearing.

**2.** NDAC 75–02–04.1–06.1, on *"Determination of support amount in multiple-family cases,"* directs in subsection 1:

■ The purpose of a hearing to determine child support is to attempt to predict the obligor's future income. *See Helbling*, 541 N.W.2d at 447. To do this, income must be documented by "tax returns, current wage statements, and other information" and, where income is subject to fluctuation, "information reflecting and covering a period of time sufficient to reveal the likely extent of fluctuations must be provided." NDAC 75–02–04.1–02(7) [same]. The current guidelines amplify this direction for the most recent information available to the parties by allowing consideration of circumstances that are very likely to change "in the near future" that "materially affect the child support obligation." NDAC 75–02–04.1–02(8). *See also* Draft Changes to N.D. Admin. Code Ch. 75–02–04.1 Child Support Guidelines, March 14, 1994, Prepared by Blaine L. Nordwall, at p. 4 (*Draft Changes*) ("In the large number of cases where the obligor is paid a salary or wage, the best indicator of future earnings is not income from the preceding twelve months, but income from the most recent pay period."). Given the habitual amount of time between motion and hearing, as evidenced by this case, we believe it would be unwise to confine consideration to evidence of an obligor's earnings before the date of the motion. Indeed, adopting Kopp's argument would increase the likelihood of speculative income calculations, because evidence of Kopp's actual 1994 gross income was more clearly defined at the time of the December hearing. If unforeseen decreases develop, Kopp is free under NDCC 14–09–08.4(3) to seek reduction of child support. The trial court did not err in basing income calculations on the most recent evidence available.

■ Kopp also asserts that the trial court should have applied the new child support guidelines that became effective January 1, 1995, after the date of the hearing but before the trial court made its decision. According to Kopp, he would have benefited from application of the elaborate new formula under NDAC 75–02–04.1–06.1 for determination of support in multiple-family cases.[2] Although

This section must be used to determine the child support amount presumed to be the cor-

Kopp admits that the new guidelines were not brought to the attention of the trial court, under the circumstances we agree that on remand the new guidelines should be applied.

The new guidelines attempt to correct shortcomings of the prior version, and operate, in many respects, to clarify and make explicit what was originally intended by the drafters of the predecessor. *See generally Draft Changes* at pp. 1–10. Because the pre–1995 guidelines did not accommodate a situation where an obligor owed a duty of support to more than one obligee, this court held in *Bergman v. Bergman*, 486 N.W.2d 243, 246 (N.D.1992), that the trial court should decide the amount of support "by striking a balance between the needs of the children and the ability of the noncustodial parent to pay." The formula in the current guidelines details the proper method to do so.

In this case, the new guidelines were in effect when the trial court made its decision, and they specifically address computation of child support in a multiple-family situation. We see no barrier to applying the new guidelines on remand to determine Kopp's child support obligation among several families.

The trial court's calculation of Kopp's child support obligation is clearly erroneous. We remand for further proceedings to determine the appropriate amount of child support under the new guidelines.

### IV. ATTORNEY FEES

■ Shaver asserts that the trial court erred in summarily denying her request for attorney fees, presumably made under NDRCivP 11 or NDCC 28–26–01(2). Shaver contends attorney fees should have been awarded because Kopp's defenses against paying extended support for Jeremy and for refusing to provide requested financial information were unwarranted. We reject this contention for several reasons.

First, the record contains no written motion for attorney fees, but only an affidavit of Shaver's attorney that did not identify any

rule or statute that authorized the attorney fees sought. Second, there is no transcript of the June 1994 hearing in the record that might shed some light on the trial court's reasons for summarily denying the request. Also, Shaver acknowledged she did not comply with NDCC 14–09–08.2(2) by having the clerk of court serve the affidavit. Finally, the question whether a private obligee could enforce child support under NDCC 14–09–08.4(3) had not then been addressed by this court. There was sufficient plausibility in Kopp's arguments to avoid a finding of frivolity. *See Soentgen v. Quain & Ramstad Clinic, P.C.*, 467 N.W.2d 73, 84–86 (N.D. 1991). We conclude that the trial court did not abuse its discretion in refusing to award attorney fees against Kopp as a sanction.

Shaver also asserts that, under NDCC 14–05–23, she should be awarded attorney fees for this appeal. As we explained in *Hager v. Hager*, 539 N.W.2d 304, 306 (N.D.1995), although we have concurrent jurisdiction to decide the issue, we prefer that the trial court determine whether to award attorney fees because the trial court is in a better position to assess relevant factors.

We reverse the amended decree and remand for further proceedings.

VANDE WALLE, C.J., SANDSTROM and NEUMANN, JJ., and BERYL J. LEVINE, Surrogate Judge, concur.

VANDE WALLE, Chief Justice, concurring specially.

I write separately with respect to the inclusion of deferred income within the definition of gross income for purpose of the guidelines. I agree that children cannot wait for support and that obligors should not be allowed the option of deferring income until the child reaches adulthood and no support obligation remains. But, it is apparent the supposition is that the withdrawal will come when the obligation is ended. What will happen in those possibly rare circumstances in which the deferred income is withdrawn

rect amount of child support in all cases involving an obligor who:

  a. Owes duties of support payable to two or more obligees; or

  b. Owes a duty of support to at least one obligee and also owes a duty of support to a child living with the obligor who is not also the child of that obligee.

while the support obligation is still in effect? Will it be considered income going in *and* coming out?

Or, if there are several children, some who reach majority before withdrawal and others after withdrawal, will the deferred income be considered income only for those children who are eligible for support at the time it is deferred but not for the obligation remaining when it is withdrawn? Does the deferred income lose its identity once deferred and reemerge with a new identity when combined with earnings and then withdrawn? We do not and need not answer these questions now but the majority opinion provides the yeast to ferment these questions for the future.

There is also some inconsistency in holding that past overtime wages must be included, without regard to whether or not overtime is likely in the future, but also holding that the trial court need not base its child support determination solely on the twelve months preceding the filing of the motion for increased support. I agree that the children should share in the income. I continue to adhere to the position set forth in the concurrence in *Helbling v. Helbling*, 541 N.W.2d 443, 448 (N.D.1995) [VandeWalle, C.J., concurring in result] that where a " 'windfall' is clearly one-time ... the better procedure is for the trial court to automatically provide for a reduction in support when the effect of the windfall ceases." Although the trial court determined that the overtime was an "unknown variable" for future child support payments, I would not classify it as a windfall. Nevertheless, the trial court could specify different levels of support which would automatically reduce or increase with more or less overtime, thus avoiding a needless motion.