Tammy SURERUS, f/k/a Tammy Flaten, Plaintiff and Appellee,

v.

Mark Thomas MATUSKA, Defendant and Appellant.

Civ. No. 950423.

Supreme Court of North Dakota.

May 29, 1996.

Daniel E. Bertsch, Assistant State's Attorney, Fargo, for Plaintiff and Appellee.

Mark Thomas Matuska, Fargo, pro se.

NEUMANN, Justice.

Mark Thomas Matuska appeals an order amending his child support obligation. We hold that an imprisoned obligor who has no other income on which to compute a child support obligation may be unemployed or underemployed for the purpose of imputing income under the child support guidelines. We reverse and remand.

Matuska and Tammy Surerus are the parents of a son, Christopher, born April 12, 1979. On April 14, 1982, Matuska was or-

dered to pay $50.00 per month child support. This obligation has been reviewed many times since, but has not been increased until the most recent review, initiated by motion of the Fargo Regional Child Support Enforcement Unit (Unit).[1] The hearing was held on July 5, 1995, and Matuska's obligation was increased to $250.00 per month.

Since early May 1995, and on a few other occasions dating back to 1979, Matuska has been incarcerated at the North Dakota State Penitentiary. Between prison sentences, Matuska has held various jobs and also has attended college as a full-time student. Beginning in August 1994, he worked for a Fargo business as a structural drafter earning $7.00 per hour. In mid-January 1995, his hourly wage was increased to $8.00 per hour. Matuska left this employment in late April 1995 to begin serving his current prison sentence. His projected release is August 1998.

In increasing Matuska's child support obligation from $50.00 per month to $250.00 per month, the judicial referee found, because of Matuska's incarceration, he was "voluntarily unemployed/underemployed" under section 75–02–04.1–07 of the child support guidelines. The referee determined Matuska had a monthly net income of $1,133.00 based on his most recent employment as a structural drafter earning $8.00 per hour. Applying subsection (3)(c) of section 75–02–04.1–07, the referee multiplied Matuska's monthly net income times 90 percent, arrived at $1,020.00, and then imputed this amount to Matuska as income. The referee determined the presumptively correct amount of child support for an obligor with a monthly net income of $1,020.00 and one child is $250.00 per month. The referee set forth these proposed findings and conclusions in a decision dated August 4, 1995.

Matuska timely requested a review by the district court of the judicial referee's recommended findings and conclusions. The district court determined the referee's findings and conclusions were not clearly erroneous and amended the April 14, 1982, order ac-

1. At hearings held in July 1994 and October 1994, Matuska was ordered to pay an additional $25.00 per month, which was applied toward child support arrearages totaling over $3,700.00. The record indicates the arrearages are now paid in full.

cordingly. Matuska appeals the district court's amended order.

Matuska's arguments on appeal challenge the jurisdiction of the district court, the authority of the Unit, and the validity and application of section 75–02–04.1–07 of the child support guidelines. We address each in turn.

Matuska first contests the district court's personal jurisdiction of the parties and the court's subject-matter jurisdiction of the action. He asserts no factual or legal basis for the argument; we determine it is without merit.

■ Matuska also argues the district court lacked jurisdiction to amend his child support obligation. It is well established that a district court has continuing jurisdiction to modify a child support order. *E.g., Rueckert v. Rueckert,* 499 N.W.2d 863, 867 (N.D.1993); *see Nelson v. Nelson,* 547 N.W.2d 741 (N.D.1996)(indicating a material change in circumstances is now required only when a modification is sought within less than one year after entry of the child support order). This argument, therefore, also is without merit.

■ Matuska next argues the Unit lacked authority to seek review and modification of his child support obligation. Matuska claims Surerus did not request a review of his child support obligation and the Unit did not have an assignment of support rights from Surerus. At the time of the Unit's motion to increase Matuska's child support obligation, Surerus was receiving medical assistance benefits. The Unit had the right to seek reimbursement for these benefits from child support payments regardless of a request by Surerus, N.D.C.C. § 14–09–08.4(1)(a), or an assignment of support rights by Surerus. *Mehl v. Mehl,* 545 N.W.2d 777, 779 (N.D. 1996) (indicating the State also is given a statutory assignment to seek reimbursement for medical assistance benefits); *Eklund v.*

*Eklund,* 538 N.W.2d 182, 184–85 (N.D.1995) (discussing a child support agency's authority to periodically review and seek amendment of child support orders under permanent section 14–09–08.4, N.D.C.C.). Matuska's argument on this issue also is without merit.

■ Matuska's final arguments are directed at section 75–02–04.1–07 of the child support guidelines, which permits imputing income to an unemployed or underemployed obligor based on earning capacity. First, he contends the Department of Human Services (Department) exceeded its grant of authority under section 14–09–09.7, N.D.C.C., because the definition of "income" under subsection (6) of section 14–09–09.10, N.D.C.C., does not include "imputed income." Therefore, he asserts, the Department impermissibly expanded the definition of "income" when it promulgated the imputed income guideline.

In this court's recently filed *Nelson* decision, we determined the imputed income guideline was "a reasonable exercise of the rule-making authority" of the Department. 547 N.W.2d at 744. Although the "income" considered under the guidelines encompasses more sources than "income" as defined under section 14–09–09.10, N.D.C.C.,[2] this court further held in *Nelson* that the Department's authority to promulgate the imputed income guideline derived from its statutory directive to "designate other available resources to be considered" in determining a child support obligation under the guidelines. *Id.* at 745; N.D.C.C. § 14–09–09.7(1)(c). The imputed income guideline is based on an obligor's earning capacity. N.D. Admin. Code § 75–02–04.1–07. Earning capacity is a resource available to an obligor. *Nelson,* 547 N.W.2d at 744–45. Therefore, Matuska's argument about the guideline definition of "income" differing from the statutory definition fails because the Department was within its scope of authority under section 14–09–09.7 when it adopted the imputed income guideline.

---

**2.** Income under section 14–09–09.10 is defined as:

"... any form of payment, regardless of source, owed to an obligor, including any earned, unearned, taxable or nontaxable income, workers' compensation, disability benefits, unemployment compensation benefits, an-

nuity and retirement benefits, but excluding public assistance benefits administered under state law."

N.D.C.C. § 14–09–09.10(6). Income under the guidelines is defined more precisely under "gross income." *Compare id. with* N.D. Admin. Code § 75–02–04.1–01(5).

Matuska last argues, if the imputed income guideline is valid, the judicial referee applied it incorrectly.[3] We agree, and remand for a correct application of the guideline in light of this opinion and the recently filed *Nelson* opinion.

A trial court's modification of child support is a finding of fact that will not be set aside unless clearly erroneous. *Rueckert,* 499 N.W.2d at 868. A finding of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Dalin v. Dalin,* 545 N.W.2d 785, 788 (N.D.1996). Conclusions of law are fully reviewable. *Gajewski v. Taylor,* 536 N.W.2d 360, 362 (N.D.1995).

Apparently relying on this court's decision in *Koch v. Williams,* 456 N.W.2d 299 (N.D. 1990), the judicial referee found Matuska's incarceration (and resulting loss of income) was a voluntary act, and further found Matuska was therefore voluntarily unemployed or underemployed. The referee did not need to find Matuska's incarceration voluntary in order to impute income to him under section 75-02-04.1-07 of the guidelines. As we explained in *Nelson,* to trigger application of the guideline, an obligor need only meet the definition of unemployment or underemployment. 547 N.W.2d at 743.

Under the current child support guideline law as discussed in *Nelson,* the "voluntariness" of an obligor's change in financial circumstances does not carry the relevancy it once did in modifying a child support obligation, unless the modification is sought within one year after entry of a child support order. *Nelson,* 547 N.W.2d at 744. Because section 14-09-08.4 now directs periodic review of all child support orders, *Eklund,* 538 N.W.2d at 184-85, a child support obligation is subject to an increase or decrease regardless of the "voluntariness" or "involuntariness" of an obligor's change in financial circumstances. *See Nelson,* 547 N.W.2d at 743.

The judicial referee found Matuska was either unemployed or underemployed, and imputed income to him under subsection (3)(c) of the imputed income guideline, based on the evidence of Matuska's earnings as a structural drafter during the four months preceding his present incarceration.[4] At the July 5, 1995, hearing, Matuska indicated he was unemployed in prison, but expected he would be employed at a basic wage of $1.25 per day. He also stated he might get employment with the industry program in the prison at a wage of $.32 to $1.40 per hour. At oral argument, Matuska indicated he was earning $50.00 per month in prison but anticipated earning a higher wage. At the hearing and on appeal, Matuska objected to the referee imputing income based on his pre-incarceration earnings. He argued his child support obligation should be calculated based on his present earnings because he is unable to pay the amended amount and is concerned the resulting accrued debt would hinder his rehabilitation upon his release from prison.

Though arguably the guidelines do not contemplate the situation of an incarcerated obligor, it is nonetheless necessary to apply them and develop a workable solution. Ordi-

3. Matuska also argues the referee erred in calculating his child support obligation because the calculation did not account for his "other two children" as allowed under the multiple-family provision of the guidelines. However, Matuska failed to present this evidence to the referee at the July 5, 1995, hearing. Further, the only evidence in the record concerning two other children is a finding by the referee in a decision dated October 25, 1994, stating "[Matuska] has two children living in his home." It is unclear from this finding whether Matuska owes a duty of support to the children.

4. We note the referee incorrectly applied subsection (3)(c) because income was not imputed based on "[a]n amount equal to ninety percent of the obligor's *greatest average gross monthly earnings, in any twelve months beginning on or after thirty-six months before commencement of the proceeding before the court.*" N.D. Admin. Code § 75-02-04.1-07(3)(c) (emphasis added). Instead, income was imputed based on Matuska's wage of $8.00 per hour, which he earned for less than four months before beginning his current prison sentence in May 1995. During the four to five month period preceding the $8.00 per hour wage, Matuska earned $7.00 per hour. The record does not indicate Matuska's earnings for the remaining three to four months out of the twelve-month period preceding his present incarceration.

narily, a finding of either unemployment or underemployment is necessary to impute income under section 75–02–04.1–07. *Nelson,* 547 N.W.2d at 744–45. However, as will become apparent, on the facts of this case, a finding of one or the other is not important because it would be a distinction without a difference. Ordinarily, too, the analysis would then proceed to calculating the amount of income to impute to an obligor based on the greatest of the three variations of imputed income under subsection (3): minimum wage, relevant prevailing wage, or past earnings. N.D. Admin. Code § 75–02–04.1–07(3)(a),(b),(c).[5] But the imputed income guideline provides exceptions to the general rule of subsection (3). *E.g., id.* § 75–02–04.1–07(4). We believe Matuska sufficiently rebutted this general rule by showing under subsection (6) that employment opportunities are unavailable to him in the community because his opportunities are limited to the prison.[6]

Subsection (6) of the imputed income guideline provides:

> "If an unemployed or underemployed obligor shows that employment opportunities, which would provide earnings at least equal to the lesser of the amounts determined under subdivision b or c of subsection 3, are unavailable in the community, income must be imputed based on earning capacity equal to the amount determined under subdivision a of subsection 3, less actual gross earnings."

N.D. Admin. Code § 75–02–04.1–07(6). Subsection (3)(a) imputes income based on "[a]n amount equal to one hundred sixty-seven times the hourly federal minimum wage" less actual gross earnings. N.D. Admin. Code § 75–02–04.1–07(3)(a).

Referring to the unavailability of employment opportunities within the "community" (defined elsewhere in the guidelines as the area within one hundred miles of the obligor's actual place of residence), subsection (6) makes such unavailability the basis for imputing a minimum wage income under subsection (3)(a), rather than an income based on the relevant prevailing wage under subsection (3)(b) or past earnings under subsection (3)(c). Though employment opportunities as a structural drafter may well exist within one hundred miles of the state penitentiary, the opportunities are not available to Matuska while he is incarcerated because he cannot leave the prison.[7] Therefore, subsection (6) should be applied to an incarcerated obligor such as Matuska who has no other income, who apparently is ineligible for work release, and whose earnings in confinement are less than the minimum wage.

We recognize this analysis for an incarcerated obligor might be viewed as a strained application of the imputed income guideline, especially subsection (6), but we reiterate the guidelines do not otherwise address the particular circumstance of an incarcerated obligor such as Matuska. *See, e.g., Spilovoy v. Spilovoy,* 488 N.W.2d 873, 878 (N.D.1992). Also, we think it unreasonable to assume the guideline drafters intended to impute income to incarcerated obligors based on employment opportunities not available to those obligors. We conclude application is proper under Matuska's particular circumstance of incarceration.

---

5. Subsection (3) provides:
   "Except as provided in subsections 4 and 5, monthly gross income based on earning capacity equal to the greatest of subdivisions a through c, less actual gross earnings, must be imputed to an obligor who is unemployed or underemployed.
   a. An amount equal to one hundred sixty-seven times the hourly federal minimum wage.
   b. An amount equal to six-tenths of prevailing gross monthly earnings in the community of persons with similar work history and occupational qualifications.
   c. An amount equal to ninety percent of the obligor's greatest average gross monthly earnings, in any twelve months beginning on or after thirty-six months before commencement of the proceeding before the court, for which reliable evidence is provided."
   N.D. Admin. Code § 75–02–04.1–07(3).

6. Nothing in the record suggests Matuska owns any investments or other assets, or has any other source or possibility of income that might exceed the federal minimum wage.

7. There is nothing in the record indicating the possibility of work release for Matuska.

Further, we believe application of subsection (6) of the imputed income guideline to an incarcerated obligor who has no other income appropriately promotes this state's strong public policy of protecting the best interests of children and preserving parents' legal and moral obligations to support their children, while recognizing, but not excusing, the obvious difficulty an incarcerated obligor faces in providing for his or her children. *Koch*, 456 N.W.2d at 301–02. Our response to the argument about an accrued child support debt hindering rehabilitation upon release from prison is the same here as it was in *Koch*— "the amount to be paid each month can be adjusted as [the] financial condition then requires." *Id.* at 302. An incarcerated obligor's "burden" is further alleviated post-*Koch* because that obligor is entitled to seek review and modification of a support order at least annually. *Nelson*, 547 N.W.2d at 743.

Accordingly, we remand with instructions to apply the above guideline method and recalculate Matuska's child support obligation. The order modifying Matuska's child support is reversed.

MARING, MESCHKE and SANDSTROM, JJ., concur.

VANDE WALLE, Chief Justice, concurring in result.

I concur in the result. I agree the issue in *Koch v. Williams*, 456 N.W.2d 299 (N.D. 1990), was whether incarceration of an obligor constituted a change of circumstances so as to justify a reduction in child support. Because of the statutory changes discussed in the majority opinion, I also agree whether or not incarceration is voluntary is no longer as significant as it was in *Koch*. However, the basic question remains whether or not incarcerated obligors should accumulate arrearages in support payments when they are confined and unable to earn sufficient money to pay the support. The child support guidelines presumably specify amounts the obligor can or could pay if fully employed.

In *Hoster v. Hoster*, 216 N.W.2d 698, 702 (N.D.1974), the Court quoted with approval the following statement by the Supreme Court of Washington in *Bowers v. Bowers*, 192 Wash. 676, 74 P.2d 229, 230 (1937):

"'While, in these cases, it is the policy of the law to require fathers to adequately provide for their families, it is not the policy of the law to impose upon them obligations which they cannot perform.'"

I do not believe it is wise to release obligors from prison with an arrearage in child support so large that it is inconceivable the obligor will be able to earn enough to pay it.

Although the majority in *Koch* is not the unanimous position of jurisdictions considering this issue, *see, e.g., Pierce v. Pierce*, 162 Mich.App. 367, 412 N.W.2d 291 (1987), the result here appears to be an equitable one, i.e., it recognizes the reduced income of the obligor as a result of incarceration but does not totally relieve the obligor of child support payments as a result of that incarceration.