Patrick George SCHLEICHER,
Jr., Plaintiff and Appellee,

v.

Kimberly Ruth SCHLEICHER, n/k/a
Kimberly Dworshak, Defendant
and Appellant.

Civil No. 950376.

Supreme Court of North Dakota.

June 27, 1996.

Thomas D. Kelsch (argued), of Kelsch, Kelsch, Ruff, Austin & Kranda, Mandan, for plaintiff and appellee. Appearance by appellee Patrick G. Schleicher.

William D. Schmidt (argued), of Schmitz, Moench & Schmidt, Bismarck, for defendant and appellant.

NEUMANN, Justice.

Kimberly Schleicher appeals from an amended judgment modifying the child support and visitation provisions of the parties' prior divorce judgment. We affirm in part, reverse in part, and remand for further proceedings.

Kimberly and Patrick Schleicher divorced in 1984. The original divorce judgment, which was based upon a stipulation, awarded custody of the parties' daughter Joey to Kimberly and ordered Patrick to pay $100 per month child support. The parties on three separate occasions voluntarily agreed to increase the child support, first to $200, then to $250, and finally to $300 per month. Patrick

also at some point began placing $50 per month into a savings plan for Joey, which he indicated she would receive when she turned 18 years of age.

In February 1994, the Regional Child Support Enforcement Unit [Child Support Unit] began a periodic review of Patrick's child support obligation under Section 14–09–08.4, N.D.C.C.[1] Patrick did not respond to a pre-review notice or repeated requests for financial information. When Patrick still had not provided financial information by February 1995, the Child Support Unit filed a motion to compel Patrick to provide the required financial information.

Upon finally receiving financial information from Patrick, the Child Support Unit on April 25, 1995, filed a motion on Kimberly's behalf to increase Patrick's child support obligation to comply with the North Dakota Child Support Guidelines. Patrick filed a return to the motion and a "Cross Motion for Amending Visitation." Patrick's cross-motion requested that Kimberly be required to pay a portion of transportation costs for visitation and share in driving between Mandan, where Patrick lives, and Minot, where Kimberly and Joey live.

After a hearing on September 5, 1995, the trial court determined Patrick should pay child support of $344 per month and ordered him to additionally contribute $50 per month to an irrevocable annuity for Joey.[2] The court ordered these provisions were to take effect in October 1995. The court also ordered a structured visitation schedule, with Patrick having visitation the second and fourth weekends of each month, and five weeks of summer visitation, until Joey reaches age 16. Kimberly was ordered to deliver and pick up Joey in Washburn for the fourth-weekend visitation. An amended judgment was entered, and Kimberly appealed.

## I. ANNUITY

Kimberly asserts the trial court erred in reducing the amount of child support as calculated under the child support guidelines by the $50 Patrick was ordered to contribute to an annuity. We agree.

The trial court determined Patrick had a net income of $1,900 per month, resulting in a presumptive child support obligation of $394 per month under the guidelines. *See* Section 75–02–04.1–10, N.D.A.C. The court, however, ordered support in the amount of $344 per month, and further ordered that Patrick contribute an additional $50 per month to an irrevocable annuity for Joey.

Kimberly argues the guidelines create a rebuttable presumption of the correct amount of child support based upon an obligor's income, and there are no provisions to lower that amount based upon a corresponding payment into an annuity. The custodial parent has a representational right to collect support on behalf of the child. *Sullivan v. Quist,* 506 N.W.2d 394, 397 (N.D.1993). Child support under the guidelines is modeled upon the assumption that the presumptive amount will be paid to the custodial parent, as obligee, to use for the child's current expenses. *See Dalin v. Dalin,* 545 N.W.2d 785, 789 (N.D.1996); *Gabriel v. Gabriel,* 519 N.W.2d 293, 295 (N.D.1994); Section 75–02–04.1–02(1), N.D.A.C. We have noted, in another context, that "[c]hildren cannot wait for support." *Shaver v. Kopp,* 545 N.W.2d 170, 175 (N.D.1996) (quoting Summary of Comments Received in Regard to Proposed New N.D. Admin. Code Ch. 75–02–04.1, Child Support Guidelines, December 14, 1990, Prepared by Blaine Nordwall, at p. 4). The guidelines contain no provisions authorizing a reduction in the presumptive amount of current support for payments made to an annuity, nor do they expressly allow a portion of the support to be paid into an annuity for the child's future benefit.

---

**1.** There was some confusion at oral argument how the Child Support Unit became involved in this case. When there has been no assignment of rights to the State, Section 14–09–08.4(1)(b), N.D.C.C., authorizes periodic review of the support order if requested by the obligor or obligee. According to an affidavit submitted by Paula Messmer, a legal assistant for the Child Support Unit, Kimberly requested the periodic review.

**2.** Patrick was also ordered to transfer the $900 he had previously invested for Joey into an annuity.

The trial court may deviate from the presumptively correct amount of support under the guidelines only if it finds, by a preponderance of the evidence, that the presumptive amount is not the correct amount of support required, taking into consideration the best interests of the child. Section 14-09-09.7(3), N.D.C.C.; Section 75-02-04.1-09(2), N.D.A.C.; *Dalin*, 545 N.W.2d at 787; *Reinecke v. Griffeth*, 533 N.W.2d 695, 700 (N.D.1995). Patrick, as the party urging a deviation from the presumptively correct guideline amount, bears the burden of proof. *Dalin*, 545 N.W.2d at 788.

We can envision compelling circumstances where it may be in the child's best interests to set aside a portion of child support payments for future expenses.[3] However, neither the trial court nor Patrick have articulated any compelling circumstances which demonstrate that Joey's best interests require payment of a portion of the presumptively correct amount of support into an annuity for her future benefit. Patrick is to be commended for voluntarily contributing an amount over and above his regular support obligation for Joey's future educational expenses. On this record, however, it was error to reduce the presumptively correct amount of support under the guidelines based upon a corresponding amount to be paid into an annuity. Absent compelling circumstances, which are not present in this record, the trial court should have awarded current child support in the amount set forth in the guidelines.

## II.  CALCULATION OF NET INCOME

Kimberly asserts the trial court incorrectly calculated Patrick's net income for purposes of child support under Section 75-02-04.1-01(7), N.D.A.C. The dispute centers upon the amount of federal and state income taxes Patrick should be allowed to deduct from his gross income in calculating net income. The only evidence about Patrick's tax obligation was his W-2 form, which he claimed underrepresented his actual tax liability, and Patrick's testimony that he actually paid an additional $1,200 to $1,500 in taxes because he did not have enough tax withheld.

The trial court determined Patrick's net monthly income was $1,900, but did not explain how it arrived at that figure. Section 75-02-04.1-02(10), N.D.A.C., requires that a child support order include a statement of the obligor's net income and "how that net income was determined." On appeal, Patrick has attempted to show that $1,900 is the proper figure after subtracting the taxes shown on the W-2 and the additional $1,500 in taxes Patrick claims to have paid.

A proper finding of net income is essential to a determination of the correct amount of child support under the guidelines. *Shaver*, 545 N.W.2d at 174. In this case, the trial court's determination ignored the provisions of the child support guidelines for calculating net income. Section 75-02-04.1-01, N.D.A.C., provides, in pertinent part:

"7. 'Net income' means total gross monthly income less:

"a.  Federal income tax obligation based on application of standard deductions and tax tables;

"b.  State income tax obligation based on application of standard deductions and tax tables; ..."

These provisions clearly require that an obligor's net income for child support purposes is to be calculated using "standard deductions and tax tables." *Dalin*, 545 N.W.2d at 789; *Shaver*, 545 N.W.2d at 176; *Shipley v. Shipley*, 509 N.W.2d 49, 53 (N.D. 1993). The amount shown on an obligor's W-2 form and the actual taxes he paid are essentially irrelevant, unless it is shown those amounts are based upon standard deductions. Because an obligor can vary the amount on his W-2 form by adjusting the amount of withholding, the amount shown is not automatically deductible. *Shipley*, 509 N.W.2d at 53. Similarly, the amount of taxes actually paid will not always be reflective of

---

3.  For example, in *In re Tukker M.O.*, —— Wis.2d ——, 544 N.W.2d 417 (1996), the obligor, a professional football player, had very high current income but would earn that income for only a few years. The court concluded that he should pay 17 percent of his income, as provided under the Wisconsin guidelines, with $1,500 per month payable for current expenses and the balance paid into a trust for the child's future benefit.

the tax obligation based upon standard deductions, as required by the guidelines. The trial court should take judicial notice of the standard deductions and tax tables if the parties fail to present evidence or otherwise bring them to the court's attention. *Shaver,* 545 N.W.2d at 176.

The Department of Human Services, in promulgating the guidelines, has determined that actual taxes paid is not the proper measure for calculating net income; rather, it is what the taxes would have been if the standard deductions and tax tables were employed. We direct the trial court upon remand to recalculate Patrick's net income based upon "standard deductions and tax tables," as required by Section 75–02–04.1–01(7)(a) & (b), N.D.A.C., and to recalculate his monthly child support obligation accordingly.

### III. EFFECTIVE DATE OF MODIFICATION

■ Kimberly asserts the trial court erred in making the increase in child support effective with the October 1995 installment, rather than with the first installment due after the motion was filed in April 1995. We agree.

■ The effective date for a modification of child support depends upon the facts of each case. *Smith v. Smith,* 538 N.W.2d 222, 228 (N.D.1995); *Gabriel,* 519 N.W.2d at 295; *Shipley,* 509 N.W.2d at 53. The trial court may make its order modifying child support effective on the date the motion was filed, any date the motion was pending, the date the court issued its order, or some later date. *Mahoney v. Mahoney,* 538 N.W.2d 189, 196 (N.D.1995); *Gabriel,* 519 N.W.2d at 295. Once a petition to modify support has been filed, interested parties are on notice that the terms of the support obligation may be changed by the court. *Mahoney,* 538 N.W.2d at 196; *Gabriel,* 519 N.W.2d at 295.

■ The reason for allowing a modification of child support to take effect as of the time of filing was explained in *Gabriel,* 519

N.W.2d at 295 (quoting *Olson v. Garbe,* 483 N.W.2d 775, 776 (N.D.1992)):

> " 'If the order increasing or decreasing the obligation were required to be prospective from the date of its entry, then the party owing the support obligation or the party to whom such obligation is due could by dilatory tactics postpone his obligation to pay increased or decreased support almost indefinitely. . . .' "

The facts in this case demonstrate that Patrick's conduct delayed the modification of his support obligation by a full year. The Child Support Unit first notified Patrick in February 1994 that it was conducting a periodic review of his support obligation, and requested financial information from Patrick as authorized by Sections 14–09–08.5 and 14–09–08.6, N.D.C.C. Despite repeated requests from the Child Support Unit, Patrick refused to supply the financial information he was statutorily required to provide. Not until February 1995, when the Child Support Unit sought a court order compelling disclosure of the information, did Patrick finally comply and provide financial information. When asked at the hearing why he did not respond to the requests for financial information, Patrick testified, "I don't recall."

In effect, Patrick's conduct delayed for a year Kimberly and Joey's right to collect the appropriate amount of support under the guidelines. This inequity has been compounded by the trial court's unexplained decision to delay the increase in support until October 1995, 20 months after the Child Support Unit first initiated review.

Under the facts in this case, failure to order the increase in support be made effective with the first payment after the motion was filed is arbitrary and unreasonable, and constitutes an abuse of discretion. We direct the trial court on remand to make the modification effective with the May 1995 payment.[4]

### IV. VISITATION

Kimberly asserts the trial court erred in establishing a structured visitation schedule

---

4. We do not address the issue, not raised by the parties, that because the guidelines provide a presumptively correct amount of child support, that amount should presumptively apply back to the date the motion was filed.

when Patrick had not specifically requested one in his cross-motion.

The original divorce judgment did not set a specific visitation schedule, but provided that Patrick "shall have the right to visit the minor child" upon providing "reasonable advance notice for such visitations." At the time of the divorce, the parties lived near each other, and costs and travel time for visitation were not in dispute. In approximately 1991, Kimberly and Joey moved to Minot, more than 100 miles from Mandan, necessitating increased expense and travel time for Patrick to visit Joey.

■■■ In his "Cross Motion for Amending Visitation," Patrick requested that Kimberly be ordered to bear one-half of the cost of transportation and time spent in exercising visitation. Kimberly argues that the cross-motion did not seek modification of the visitation schedule, and that the issue therefore was not properly before the court.

We have previously held, in a closely related context, that a motion for change of custody implicitly raised the issues of visitation and transportation costs. In *Vande Hoven v. Vande Hoven,* 399 N.W.2d 855, 859–860 (N.D.1987), we held:

> "[B]ecause assessment of transportation costs is incidental to the issue of visitation rights, and because visitation rights are a part of the broader issue of child custody, we cannot say that the court's assessment of transportation costs and modification of visitation rights constitute relief 'different' than that prayed for within the meaning of the rules. Nor can we say that amending visitation rights and assessing transportation costs against Sharon amounts to an award of 'greater' relief to Michael than if he had been awarded custody of the children. We conclude that Michael's motion seeking a change of custody was sufficient to apprise Sharon of possible modification of his visitation rights and assessment against her of transportation costs to facilitate visitation."

Similarly, we conclude Patrick's "Cross Motion for Amending Visitation," which requested that Kimberly be ordered to share in transportation costs and travel time, was suf-

ficient to apprise Kimberly that the court, in granting such relief, might set a specific visitation schedule. Assessment of travel costs and travel time necessarily impact upon the visitation schedule. *See Vande Hoven,* 399 N.W.2d at 859. The trial court correctly noted that, if it had assessed transportation costs and ordered Kimberly to provide transportation but left the previous opened-ended visitation unchanged, the parties almost certainly would have been back in court seeking clarification or modification of visitation.

■■■ Kimberly also asserts she was surprised by the introduction of evidence on this issue, and would have presented additional evidence if she had been forewarned that visitation might be amended. The proper remedy for a claim of unfair surprise at trial is a continuance. *E.g, State v. Van Natta,* 506 N.W.2d 63, 69 (N.D.1993); *Williston Farm Equipment, Inc. v. Steiger Tractor, Inc.,* 504 N.W.2d 545, 552 (N.D.1993). Kimberly did not request a continuance.

We conclude the trial court did not err in amending the visitation schedule.

## V. CONCLUSION

We reverse that part of the judgment setting child support and remand for recalculation of child support in accordance with this opinion, to take effect with the May 1995 payment. We affirm that part of the judgment amending the visitation schedule.

Patrick sought an award of attorneys fees on appeal. Patrick's request is denied. Costs on appeal are taxed against Patrick under Rule 39(a), N.D.R.App.P.

VANDE WALLE, C.J., and MARING, MESCHKE and SANDSTROM, JJ., concur.