1997 ND 94

**Dennis W. EDWARDS, Plaintiff and Appellee,**

v.

**Christie EDWARDS, Defendant and Appellant.**

**Civil No. 960349.**

Supreme Court of North Dakota.

May 13, 1997.

Shane Goettle (argued) and Brian W. Hankla (on briefs), of McGee, Hankla, Backes & Wheeler, Ltd., Minot, for plaintiff and appellee.

Steven James Simonson (argued), Special Assistant State's Attorney, Minot, for defendant and appellant.

MARING, Justice.

[¶ 1] Christie Edwards Blore appealed from an amended judgment ordering Dennis W. Edwards to pay child support of $244 per month for Edwards' and Blore's minor child, Ciara Edwards. We hold the trial court's determination of child support under the child support guidelines is clearly erroneous. We reverse and remand with instructions the court enter an order requiring Edwards to pay $733 per month child support for Ciara commencing February 1996.

[¶ 2] Edwards and Blore were married in September 1988. Their only child of this marriage is Ciara, born on August 10, 1991. Edwards and Blore were divorced in July 1993. Under the original divorce decree Edwards and Blore were awarded joint legal and physical custody of Ciara. Neither parent was ordered to pay child support to the other for Ciara's care.

[¶ 3] In September 1995, Ciara started school and then began living with Blore for most of the time. Blore sought assistance from the Minot Regional Child Support Enforcement Unit to obtain child support from Edwards. An attorney for the Child Support Enforcement Unit filed a motion on February 5, 1996, requesting the district court to amend the original divorce judgment to require Edwards to pay child support for Ciara. After a hearing, the district court entered an amended judgment, dated October 7, 1996, requiring Edwards to pay child support of $244 per month.

[¶ 4] On appeal Blore asserts the trial court committed several errors in establishing the amount of child support. The trial court's determination on child support is a finding of fact and will be affirmed unless it is clearly erroneous. *Peterson v. Peterson,* 555 N.W.2d 359, 363 (N.D.1996). The trial court's findings on a motion to modify child support will not be rejected on appeal unless they are clearly erroneous. *Shaver v. Kopp,* 545 N.W.2d 170, 174 (N.D.1996). A finding

of fact is clearly erroneous if it is induced by an erroneous view of the law, if no evidence exists to support it, or if, on the entire record, we are left with a definite and firm conviction that a mistake has been made. *Surerus v. Matuska,* 548 N.W.2d 384, 387 (N.D.1996). Conclusions of law are fully reviewable. *Id.*

[¶ 5] Section 14–09–09.7(3), N.D.C.C., creates a rebuttable presumption that the amount of child support resulting from application of the child support guidelines established by the Department of Human Services is the correct amount of child support. *See, e.g., Smith v. Smith,* 538 N.W.2d 222, 225 (N.D.1995). Under the guidelines, a court must first calculate an obligor's gross income, defined as "income from any source, in any form, but does not mean benefits received from means tested public assistance programs...." N.D.A.C. § 75–02–04.1–01(5). Once the court determines gross income, certain items including tax obligations adjusted as required by the guidelines, health insurance premiums affording coverage for the child, and FICA and Medicare obligations, are subtracted to determine the obligor's net income. N.D.A.C. § 75–02–04.1–01(7). The obligor's net income is then used to set the support amount. N.D.A.C. § 75–02–04.1–10.

### Ballisti–Cast Income

■ [¶ 6] When the motion to establish support was filed in February 1996, Edwards' primary income, according to his own testimony, was his salary as a machinist with Ballisti–Cast, a business manufacturing and selling bullet casting machines. As a machinist with this company Edwards earned a gross salary in 1995 of $18,000. However, on March 1, 1996, Edwards purchased the business for $42,500. He testified he had no earnings or profit from the business in 1996 and was uncertain when the business would generate a profit for him. The trial court did not attribute any income to Edwards from the Ballisti–Cast business in establishing Edwards' child support obligation. In its findings, the trial court stated:

In attempting to establish a current child support payment, it is neither fair, equitable, or reasonable to take into consideration the monthly income of $1,500 per month that [Edwards] used to make as an employee of Ballisti–Cast, since he no longer receives such a monthly pay check. Since there is no experience of income for this Court to review at the present time, there is no current basis for the Court to make a finding as to what [Edwards'] income may be from this business in order to establish current child support payments.

Blore asserts this finding is clearly erroneous and constitutes a misapplication of the child support guidelines. We agree.

■ [¶ 7] An obligor's ability to pay child support is not solely determinable from actual income, and income compatible with an obligor's prior earning history may be imputed in calculating the child support obligation. *Nelson v. Nelson,* 547 N.W.2d 741, 744 (N.D. 1996). N.D.A.C. § 75–02–04.1–02(8), provides in part:

Calculations made under this chapter are ordinarily based upon recent past circumstances because past circumstances are typically a reliable indicator of future circumstances, particularly circumstances concerning income.

On this issue Edwards testified:

Q What capacity were you employed or did you work for Ballisti–Cast in 1995?

A Machinist.

Q How much did you make in 1995 to the best of your knowledge?

A $18,000.00.

\* \* \* \* \* \*

Q Has this business been a profit making venture for the owner?

A I don't know.

\* \* \* \* \* \*

Q You purchased this business to make a profit though, didn't you?

A I hope so.

\* \* \* \* \* \*

Q Is there anyway possible that you can lose money on Ballisti–Cast?

A No unless I over borrow myself.

\* \* \* \* \* \*

Q But you are—there's no certainty in how much you're going to make next year.

A   No.

Q   There's no certainty in how much you're going to make this year.

A   No.

Q   Other than the money that you've gotten paid while you were an employee.

A   Correct.

Edwards was uncertain what profit Ballisti–Cast would generate for him as its owner. However, he remained the sole machinist operator of the business which could continue to generate the $18,000 annual income paid to Edwards as its only machinist employee. That past machinist income is, under these circumstances, the best current predictor of Edwards' expected income from the business. Under the guidelines it is therefore both appropriate and necessary to impute that income to Edwards in determining his ability to pay child support now. We conclude the trial court's failure to impute Edwards' past earning capacity as a machinist was clearly erroneous. We, therefore, impute an annual income of $18,000 to Edwards for the Ballisti–Cast business.

### Farm Income

■ [¶ 8] Edwards also has a farm operation. The trial court determined Edwards' 1995 farm income was the best indicator of Edwards' future farm income for purposes of determining his child support obligation. Blore asserts the trial court misapplied the child support guidelines in computing Edwards' allowable deduction for payments on loans used to purchase depreciable farm machinery.

[¶ 9] The applicable guideline is found under N.D.A.C. § 75–02–04.1–05(2):

> 75–02–04.1–05.   *Determination of net income from self-employment.*
>
> \*     \*     \*     \*     \*     \*
>
> 2.   After adjusted gross income from self-employment is determined, all business expenses allowed for taxation purposes, but which do not require actual expenditures, such as depreciation, must be added to determine net income from self-employment. Business costs actually incurred and paid, but not expensed for internal revenue service purposes, such

as principal payments on business loans (to the extent there is a net reduction in total principal obligations incurred in purchasing depreciable assets), may be deducted to determine net income from self-employment.

Under this guideline, payments made on business loans for purchasing depreciable assets are deductible from adjusted gross income, but only to the extent "there is a net reduction in total principal obligations" for those purchases.

[¶ 10] To compute this deduction for determining Edwards' 1995 farm income, the trial court found that prior to 1995 Edwards had an existing machinery loan principal balance of $33,234.09 and he incurred additional loans for machinery of $49,700 during 1995, resulting in a total loan balance for machinery purchases of $82,934.09. The court also found that during 1995 Edwards made total payments of $56,234.09 toward principal obligations of loans for depreciable assets. The record evidence of the loan amounts and when they were incurred is sparse and confusing. Having reviewed this evidence, however, we are not persuaded the trial court's findings about the loan amounts or payments are clearly erroneous.

[¶ 11] Using these loan balance and payment amounts, the trial court applied the deduction under the guideline in the following manner:

> By subtracting [Edwards'] loan payments of $56,234.09 in 1995, from the total of machinery loans in 1995 of $82,934.09, there leaves a balance of $26,700.00 which represents the net reduction of machinery loans (most of which is a reduction of principal).

We conclude the trial court misapplied the guideline. The court deducted from Edwards' farm income the outstanding balance of machinery loans remaining after subtracting Edwards' 1995 loan payments. Clearly, the guideline does not allow a deduction of the outstanding loan balance. Rather, the guideline provides for a deduction of the "principal payments" on loans incurred to purchase depreciable assets to the extent those payments result in a net reduction of

outstanding principal. Under the trial court's application of the guideline, the smaller the loan payment made by Edwards in 1995 the larger the remaining balance and, hence, the larger the deduction from income. That is a result clearly not envisioned by the guideline.

[¶ 12] Using the trial court's fact findings, Edwards incurred additional loans for machinery in 1995 totaling $49,700 and made total payments in 1995 of $56,234.09 toward the principal balance for machinery loans. Edwards' 1995 payments, therefore, resulted in a "net reduction in total principal obligations" of $6,534.09 ($49,700 additional loans incurred in 1995 minus $56,234.09 payments made in 1995 equals a net reduction in principal obligations of $6,534.09). We conclude the appropriate deduction under the guideline from Edwards' adjusted farm income for the net reduction in principal obligations on loans for machinery purchases is $6,534.09.

### Edwards' Net Income

[¶ 13] Adjusting the trial court's computation of Edwards' net income for child support purposes to reflect Edwards' imputed income from the Ballisti–Cast business and to reflect the appropriate deduction for business loans on depreciable machinery results in the following net income calculation: [1]

| | |
|---|---|
| Gross Income—Ballisti–Cast | $18,000 |
| Gross Income—Farming | 34,017 |
| Depreciation—Farming | 22,843 |
| | $74,860 |

| Less: | | |
|---|---|---|
| | Federal Tax | $11,292 |
| | State Tax | 942 |
| | FICA/Medicare Tax | 1,377 |
| | Ciara's Health Insurance | 1,140 |
| | Land Payments | 5,300 |
| | Net Reduction–Machinery loan principal | 6,534 |
| | | $26,585 |

| NET INCOME | $48,275 |
|---|---|

Edwards' annual net income is divided by twelve to get his monthly net income from which his monthly child support obligation is determined under the guideline schedule. *Dalin v. Dalin,* 545 N.W.2d 785, 789 (N.D. 1996); N.D.A.C. § 75–02–04.1–10. Edwards' net monthly income is $4,023. Applying the

1. All figures are rounded to the nearest dollar

guideline schedule, his monthly child support obligation for Ciara is $733.

### Child Support Abatement and Effective Date

[¶ 14] The motion to amend the divorce decree to establish child support was filed on February 5, 1996. The hearing on the motion was held on April 30, 1996. The trial court's findings and order were entered on September 9, 1996, and the amended judgment was entered on October 7, 1996. The trial court ordered child support payments to begin on July 1, 1996, explaining:

Ordinarily, it would have been the Finding of this Court that the child support payments would be effective as of May 1, 1996. However, since by the term[s] of a previous amended judgment, [Edwards] is entitled to the child for a minimum of 8 weeks, or approximately two months every summer; the Court will give [Edwards] credit for the two months for the summer of 1996 by making the effective date of this Order July 1, 1996.

The Court finds that when there are extended visitation rights in the summer months exceeding 30 days, obligor is entitled to some relief from child support payment obligations.

In the instant case, the Court finds that [Edwards] should be allowed at least one month credit on his child support obligation.

[¶ 15] Blore asserts the trial court erred by providing an abatement of Edwards' support obligation to compensate for Ciara's summer visitations with Edwards. The child support guidelines contemplate that child support payments are to be made by the non-custodial parent to the custodial parent. *Dalin v. Dalin,* 545 N.W.2d 785, 789 (N.D.1996). The guidelines expressly prohibit an abatement for temporary periods in which the child resides with the non-custodial parent. N.D.A.C. § 75–02–04.1–02(2) provides:

75–02–04.1–02. *Determination of support amount—General instructions.*

\*      \*      \*      \*      \*      \*

amount.

2. Calculations assume that the care given to the child during temporary periods when the child resides with the obligor or the obligor's relatives do not substitute for the child support obligation.

The trial court erred in providing an abatement of Edwards' child support obligation for Ciara's temporary summer visits with him.

[¶ 16] Blore asserts the trial court abused its discretion by delaying the effective date of the support payments until July 1996. Blore wants Edwards' support obligation to begin September 1995, when Ciara began living with Blore for most of the time, or, in the alternative, to begin February 1996 when the motion for support was filed. The effective date for modification of child support depends upon the facts of each case. *Smith v. Smith,* 538 N.W.2d 222, 228 (N.D. 1995). The trial court may make its order modifying child support effective on the date the motion was filed, any date the motion was pending, the date the court issued its order, or some later date. *Schleicher v. Schleicher,* 551 N.W.2d 766, 770 (N.D.1996). The trial court's decision on the effective date is subject to review under an abuse of discretion standard. *Id.*

[¶ 17] The trial court delayed the effective date of Edwards' support payments to July 1, 1996, explaining that May 1, 1996 would be an appropriate date, but the court would provide Edwards a two-month credit for Ciara's 1996 summer visits. The court's reasoning was clearly a misapplication of the guidelines. The original divorce decree contemplated each party would have physical custody of Ciara for an equal amount of time and, therefore, neither parent was ordered to pay child support. However, the parties agree Ciara began living most of the time with Blore as of September 1995, when Ciara started school. Under the guidelines, Blore then became the custodial parent. N.D.A.C. § 75–02–04.1–01(4). The trial court must apply its discretion according to the facts. Under these circumstances, and without any proper reason for a contrary effective date, we conclude it was an abuse of discretion for the trial court to delay the beginning of Edwards' support payments later than February 1996, the month in which the motion to begin support payments was filed, because there was a clear duty to support, but no support payments were being made.

[¶ 18] We reverse the judgment of the district court and remand with directions the court enter an order for judgment requiring Edwards to pay child support for Ciara of $733 per month, commencing February 1, 1996.

[¶ 19] MESCHKE, SANDSTROM and NEUMANN, JJ., concur.

VANDE WALLE, Chief Justice, concurring in part and dissenting in part.

[¶ 20] I continue to believe the child support guidelines do not require blind adherence. *Helbling v. Helbling,* 541 N.W.2d 443, 448 (N.D.1995) (VandeWalle, C.J., concurring in result). The guideline schedule is "rebuttedly presumed to be the correct amount." N.D.A.C. § 75–02–04.1–13.

[¶ 21] Here the trial court found:

"1. In the year preceding the hearing (1995), plaintiff had been both self-employed as a farmer, and had worked as a machinist for Ballisti–Cast, Inc. & Marine of Parshall, ND. Ballisti–Cast, Inc. & Marine was a business that manufactured pistol bullets and sold and repaired boats and boat motors.

2. In March of 1996, plaintiff purchased that part of Ballisti–Cast, Inc. & Marine which manufactured bullets. In order to make this purchase, plaintiff took a loan for $42,000 secured by equipment.

3. Since this purchase in March of 1996, plaintiff no longer receives a monthly pay check from Ballisti–Cast. Plaintiff moved the bullet making part of this business to his farm. Although plaintiff hopes eventually to make a profit from this business, this year he plans to hire a secretary to help him and is unsure what, if any, income he will receive from the business over the next year or two.

4. In attempting to establish a current child support payment, it is neither fair, equitable, or reasonable to take into consideration the monthly income of $1,500 per month that plaintiff used to make as

an employee of Ballisti–Cast, since he no longer receives such a monthly pay check. Since there is no experience of income for this Court to review at the present time, there is no current basis for the Court to make a finding as to what plaintiff's income may be from this business in order to establish current child support payments."

[¶ 22] The findings of the trial court on this issue reflect fact, not fiction, and I would not disturb them on appeal. Rather, it seems to me section 75–02–04.1–05(1), N.D.A.C., supports the trial court's finding.

"Expenses attributable to the cost of producing income vary from business to business. Deducting expenses from the gross income of the business determines the adjusted gross income, according to internal revenue service terminology. *If the latest tax return is not available or does not reasonably reflect the income from the business, a profit and loss statement which will more accurately reflect the current status of the business must be used.*"

N.D.A.C. § 75–02–04.1–05(1). (Emphasis added). This guideline strongly suggests that a goal is to "accurately reflect the current status of the business."

[¶ 23] With respect to the business costs and the payment of principal, I am not entirely clear as to the application of the guideline provision "principal payments on business loans (to the extent there is a net reduction in total principal obligations incurred in purchasing depreciable assets), may be deducted to determine net income from self-employment." N.D.A.C. § 75–02–04.1–05(2). I agree with the majority the application by the trial court is not correct. The more obvious application may be that of the appellee, i.e., there was no decrease in the total principal obligation, but rather an increase because of additional borrowing, and there should be no deduction whatsoever. I am not convinced that harsh result was necessarily intended and I believe the application of the majority opinion is preferable until or unless the guideline is further clarified.

[¶ 24] I would remand for the trial court to make the appropriate calculation.

[¶ 25] Gerald W. Vande Walle