2005 ND 64

**In the Interests of A.M.S., a minor child, by her Natural Guardian, Tina FARTHING; State of North Dakota, by and through the Stutsman County Social Service Board; and Tina Farthing, Plaintiffs and Appellees**

v.

**Milton STOPPLEWORTH, Jr., Defendant and Appellant.**

**State of North Dakota, by and through the Stutsman County Social Service Board, and Tina M. Farthing, Plaintiffs and Appellees**

v.

**Milton T. Stoppleworth, Jr., Defendant and Appellant.**

**Nos. 20040268, 20040269, 20040270.**

Supreme Court of North Dakota.

March 23, 2005.

Mark S. Douglas, Jamestown, ND, for plaintiffs and appellees. Submitted on brief.

Milton T. Stoppleworth, Jr., pro se, Jamestown, ND. Submitted on brief.

VANDE WALLE, Chief Justice.

[¶ 1] Milton T. Stoppleworth, who is presently incarcerated, appealed from an order denying his motion for a reduction in child support payments. Stoppleworth argues he presented sufficient evidence to demonstrate a lack of ability to pay a child support award based on an imputed, federal-minimum-wage income while imprisoned. We hold that, as a matter of law, an incarcerated child support obligor whose payment amounts are based on an imputed, federal-minimum-wage income cannot reduce these payments by showing a lack of financial resources due to imprisonment. We affirm the district court's order.

[¶ 2] Stoppleworth is the father of three minor children involved in this suit. Stoppleworth is presently incarcerated for aggravated assault and reckless endangerment stemming from an altercation with another individual. *State v. Stoppleworth*, 2003 ND 137, ¶¶ 1–2, 667 N.W.2d 586. Stoppleworth brought a motion to reduce his child support obligation during his imprisonment. According to Stoppleworth's motion and supporting affidavit, he is currently ordered to pay $300 per month in child support, consisting of $250 per month for current obligations and an additional $50 per month for arrearages. Stoppleworth's supporting affidavit states these amounts were calculated pursuant to the imputation of a federal-minimum-wage in-

come under N.D. Admin. Code § 75–02–04.1–07. Stoppleworth seeks to reduce his payment to $20 per month.

[¶ 3] The district court determined that Stoppleworth was not entitled to a reduction in child support payments because his incarceration is a result of his bad conduct, and the court would not permit Stoppleworth to be released from his child support obligation when he brought the circumstances of his imprisonment upon himself. Also, the district court held that Stoppleworth failed to provide any calculations that would warrant a child support reduction.

[¶ 4] Stoppleworth argues the district court erred in failing to accept his proffered evidence regarding a lack of financial resources. Stoppleworth points to his motion, reply brief, application to proceed in forma pauperis, supporting affidavit, and certificate of inmate account and assets, all of which he claims support his lack of resources and satisfy his burden of rebutting the presumption that the original child support figure is correct. Stoppleworth also argues the North Dakota child support system must comply with federal provisions that prohibit the use of non-rebuttable presumptions, and he claims he should be allowed to rebut the $300 presumed support amount by showing an inability to pay.

## I.

[¶ 5] Child support determinations involve questions of law subject to a de novo standard of review, findings of fact subject to a clearly erroneous standard of review, and may involve matters of discretion subject to an abuse of discretion standard of review. *T.E.J. v. T.S.*, 2004 ND 120, ¶ 4, 681 N.W.2d 444.

[¶ 6] We have previously dealt with the subject of incarcerated child support obligors. Most notably, in *Surerus v. Matus-ka,* 548 N.W.2d 384 (N.D.1996), we discussed a case where a district court used the pre-incarceration income of an incarcerated obligor for child support purposes. *Id.* at 385. We held this imputation was incorrect and instead imputed income based on the federal minimum wage. *Id.* at 388; N.D. Admin. Code § 75–02–04.1–07(3)(a). Specifically, we stated that a minimum-wage imputation "should be applied to an incarcerated obligor ... who has no other income, who apparently is ineligible for work release, and whose earnings in confinement are less than the minimum wage." *Matuska,* 548 N.W.2d at 388. Indeed, we punctuated Matuska's lack of financial ability to satisfy even this lesser obligation, i.e., the obligation based on the minimum wage as opposed to the obligation based on Matuska's previously higher earnings. *Id.* at 388 nn. 6–7. We concluded by noting that imputation of a minimum-wage income "to an incarcerated obligor who has no other income appropriately promotes this state's strong public policy of protecting the best interests of children and preserving parents' legal and moral obligations to support their children, while recognizing, but not excusing, the obvious difficulty an incarcerated obligor faces in providing for his or her children." *Id.* at 389.

[¶ 7] *Matuska* does not provide incarcerated obligors with a complete reprieve from their child support obligations due to the financial hardships associated with imprisonment. *Matuska* repeatedly emphasized the defendant's lack of financial resources capable of satisfying a minimum-wage-based obligation. In this regard, *Matuska* necessarily stands for the proposition that incarceration, even if it results in a complete lack of financial resources, is alone no justification for a reduction in child support payments below

what a minimum-wage earner, or a person without employment, would owe.

■ [¶ 8] Nonetheless, Stoppleworth argues his incarceration has stripped him of an ability to satisfy his obligations, which, in turn, should justify a reduction in his minimum-wage-based monthly payments. Stoppleworth largely bases his contention on two cases from other jurisdictions, both of which struck down irrebuttable, mandatory-minimum child support awards on federal grounds. *In re Marriage of Gilbert*, 88 Wash.App. 362, 945 P.2d 238, 241–42 (1997); *Rose ex rel. Clancy v. Moody*, 83 N.Y.2d 65, 607 N.Y.S.2d 906, 629 N.E.2d 378, 380 (1993).

[¶ 9] We recently discussed these cases in *Interest of R.H.*, 2004 ND 170, ¶ 9, 686 N.W.2d 107, *cert. denied*, —— U.S. ——, 125 S.Ct. 1340, 161 L.Ed.2d 141, 2005 WL 406599. In *R.H.*, the incarcerated defendant, Hernandez, was ordered to make child support payments to reimburse the State for services provided to his child. *Id.* at ¶ 3. The payment amounts were based on the imputation of a minimum-wage income. *Id.* at ¶¶ 2–3. We discussed and reaffirmed the appropriateness of imputing a minimum-wage income to an incarcerated obligor. *Id.* at ¶¶ 5–6. We considered Hernandez's assertion that federal law prohibits the use of a mandatory minimum child support order. *Id.* at ¶¶ 7–11. The applicable federal statute regarding the award of child support states:

There shall be a rebuttable presumption, in any judicial or administrative proceeding for the award of child support, that the amount of the award which would result from the application of such guidelines is the correct amount of child support to be awarded. A written finding or specific finding on the record that the application of the guidelines would be unjust or inappropriate in a particular case, as determined under criteria established by the State, shall be sufficient to rebut the presumption in that case.

42 U.S.C. § 667(b)(2); *see also* 45 C.F.R. § 302.56(f) and (g) (same language).

[¶ 10] The *R.H.* Court proceeded to discuss *Gilbert* and *Rose* in light of the federal law. *R.H.*, at ¶ 9. We held that the decisions in these two cases were inapplicable to North Dakota law, as North Dakota's child support provisions explicitly provide that any child support amount is rebuttably presumed to be correct. *R.H.*, at ¶ 10 (discussing N.D.C.C. § 14–09–09.7(3) and N.D. Admin. Code §§ 75–02–04.1–13, 75–02–04.1–09). Indeed, the North Dakota Child Support Guidelines, i.e., the "criteria established by the State," do provide for many situations in which the presumptively correct amount of child support obtained from the Guidelines can be rebutted. N.D. Admin. Code § 75–02–04.1–09. Specifically, N.D. Admin. Code § 75–02–04.1–09(2)(j) creates an allowance for situations "over which the obligor has little or no control." The regulations continue, however, by stating that, "[f]or purposes of subdivision j of subsection 2, a situation over which the obligor has little or no control does not exist if the situation arises out of . . . illegal activity." N.D. Admin. Code § 75–02–04.1–09(5).

■ [¶ 11] Under the North Dakota Child Support Guidelines, then, illegal activity is not one of the avenues through which a presumptively correct child support award can be entirely rebutted. We do not believe this result conflicts with federal law. Federal law requires a rebuttable presumption, with the criteria for rebuttal established under state law. *See* 42 U.S.C. § 667(b)(2). The North Dakota Guidelines provide many grounds on which a presumptively correct award can be rebutted. *See R.H.*, at ¶ 10; N.D. Admin. Code § 75–02–04.1–09. That incarcerated

obligors are placed outside these protections does not require a finding that 42 U.S.C. § 667(b)(2) has been violated.

[¶ 12] There is a fundamental distinction between the provisions enacted in Washington and New York and North Dakota's Child Support Guidelines. Washington and New York created mandatory-minimum monthly payment amounts that could not be rebutted by any obligor in any situation. In contrast, North Dakota created rebuttable guidelines that are defined and limited in certain respects. This is not a distinction without a difference. Logically, a child support obligor cannot automatically be allowed, in every circumstance, to rebut his obligation simply by demonstrating an inability to pay. Rather, as provided in the Child Support Guidelines, there must be standards for rebuttal. Although, because of a change in the Guidelines, the "voluntariness of an obligor's change in financial circumstances does not carry the relevancy it once did in modifying a child support obligation," *Surerus v. Matuska*, 548 N.W.2d at 387 (internal quotations omitted), if, for example, an obligor chooses to buy a "toy," gamble his livelihood away, or fraudulently transfer his assets rather than meet his obligations, one would not seriously expect the courts to ignore, much less reward, such self-inflicted harm. The result is no different when an obligor enters prison by voluntarily violating the law. To be sure, any of these situations might make it difficult or even impossible to satisfy a child support obligation. Nonetheless, an obligor's errors do not justify punishing the obligor's innocent children. *See* N.D. Admin. Code § 75–02–04.1–09(2) (discussing best interests of the supported children); 45 C.F.R. § 302.56(g) (state criteria for rebuttal must take into consideration best interests of child).

[¶ 13] Our conclusion balances the interests of the child with the current, temporary inability to pay that "recognizes the reduced income of the obligor as a result of incarceration but does not totally relieve the obligor of child support payments as a result of that incarceration." *Surerus v. Matuska*, 548 N.W.2d at 389 (VandeWalle, C.J., concurring). Nor does the conclusion result in the obligor released from prison with an arrearage in child support so large that it is inconceivable the obligor will be able to earn enough to pay it. *Id.*

[¶ 14] We believe this is why the federal provisions referenced above give States the authority to establish the criteria for rebuttal and emphasize that rebuttal is only necessary where the presumptively correct award would be "unjust or inappropriate." 42 U.S.C. § 667(b)(2); 45 C.F.R. § 302.56(g). The equitable principles underlying this result appear not only in federal law, but have been highlighted in our previous decisions as well. *See, e.g., Koch v. Williams*, 456 N.W.2d 299, 301–02 (N.D.1990).

[¶ 15] Therefore, our Child Support Guidelines have determined that, as a matter of law, financial hardship brought about by incarceration is not a situation in which an award of the presumptively correct amount of child support is "unjust or inappropriate." To the extent *Interest of R.H.*, 2004 ND 170, ¶ 11, 686 N.W.2d 107, implies that incarcerated obligors can refute a presumptively correct, minimum-wage-based child support award by simply demonstrating an immediate inability to pay, *R.H.* is hereby explained. This result is not foreclosed by federal law, but, rather, is specifically permitted to be made "under criteria established by the State."

## II.

[¶ 16] We have reviewed Stoppleworth's other arguments, namely, that his

obligation poses an undue hardship and that his incarceration is analogous to a disability that precludes gainful employment, and we find these arguments to be without merit.

[¶17]   We affirm the district court's order.

[¶18]   CAROL RONNING KAPSNER, MARY MUEHLEN MARING, and DALE V. SANDSTROM, JJ., concur.

[¶19]   The Honorable WILLIAM A. NEUMANN, a member of the Court when this case was heard, resigned effective March 14, 2005, and did not participate in this decision.